COMMONWEALTH *vs.* STEVEN A. SHRAIAR.

Essex.  December 3, 1985 — March 6, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Stipulation, Assistance of counsel. *Conflict of Interest. Attorney at Law,* Conflict of interest. *Evidence,* Other offense.

A nursing home operator charged with larceny in the withdrawal of money from a patients' personal needs trust account did not demonstrate a genuine conflict of interest resulting from his attorney's entering into a stipulation which was read to the jury, where the stipulation related only to the existence of certain underlying facts as they concerned the attorney and not to the substance of the attorney's testimony were he to testify, and where the stipulated facts, which related to payments by the defendant to the attorney, were largely uncontested and could have been proved readily through another source. [21-23]

The judge who heard a criminal defendant's motion for a new trial was warranted in concluding that the defendant had not been deprived of his constitutional right to effective assistance of counsel by reason of an alleged genuine conflict of interest where the judge found that the attorney did not participate in the transactions which formed the basis for larceny charges against the defendant. [23-24]

Although the relationship between a criminal defendant and his attorney presented a potential conflict of interest, the record of the defendant's larceny trial provided no basis for concluding that any potential conflict had materially prejudiced his defense. [24-26]

Where a nursing home operator on trial for larceny in the withdrawal of money from a patients' personal needs trust account introduced evidence that he had made partial repayment of the money, the Commonwealth's rebuttal evidence showing that the defendant had made subsequent withdrawals, which were not the subject of larceny charges, was properly admitted as probative of his intent to deprive the account permanently of the funds in question. [26]

INDICTMENT found and returned in the Superior Court Department on December 14, 1981.

The case was tried before *John T. Ronan,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harry C. Mezer* for the defendant.

*Kenneth T. Bowden, II,* Assistant Attorney General, for the Commonwealth.

HENNESSEY, C.J. Following a jury trial in the Superior Court, the defendant, Steven A. Shraiar, was convicted on four counts of larceny over $100. Shraiar was sentenced to four concurrent one-year terms in a house of correction. These sentences were stayed, and an appeal filed. Shraiar retained new defense counsel for the purpose of appeal. Prior to briefing or argument, Shraiar moved to remand the case to the Superior Court for consideration of a motion for new trial. A single justice of the Appeals Court allowed this motion. After a hearing, the trial judge denied Shraiar's motion for a new trial. Shraiar appealed the denial of this motion, which appeal was consolidated with his appeal from the convictions. We transferred the case here on our own motion.

On appeal, Shraiar claims that he was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, and art. 12 of the Massachusetts Declaration of Rights, due to his trial attorney's conflict of interest. Shraiar also contends that the trial judge erred in admitting evidence of subsequent, uncharged larcenies. We affirm the convictions and the denial of Shraiar's motion for new trial.

The facts were as follows. Shraiar purchased the Newburyport Manor Nursing Home on December 1, 1980. Soon thereafter, Shraiar began experiencing difficulties meeting the expenses of the home. As a result of these difficulties, Shraiar withdrew funds from the patients' personal needs allowance (PNA) account. The PNA account contains the monthly personal allowances of the home's Medicaid recipients, which in this case were held in trust by the home for the benefit of these residents.[1] Between December 19, 1980, and June 16,

---

[1] The disposition of PNA accounts is governed by regulations of the Department of Public Welfare, 106 Code Mass. Regs. §§ 456.801 et seq.,

1981, Shraiar made four withdrawals from the PNA account, totalling approximately $15,000. In each instance, Shraiar either cashed the check or deposited the money in the operating or payroll account of the home.

These withdrawals are the subject of the indictment against Shraiar for four counts of larceny over $100. Shraiar's defense to these charges has consistently been that he intended to repay these "borrowed" funds, and that he therefore lacked the requisite intent for the crime of larceny.

Attorney Richard H. Gens entered his appearance on behalf of Shraiar on December 23, 1981, soon after the indictments were returned against the defendant. Mr. Gens had previously represented Shraiar in numerous matters regarding Shraiar's ownership of a pharmacy, and had also represented Shraiar in his purchase of the nursing home. Mr. Gens served as lead defense counsel throughout Shraiar's trial. Mr. Gens' daughter and law partner, Sara Gens Birenbaum, assisted him in the preparation of Shraiar's defense.

On February 9, 1982, the prosecution provided defense counsel with a list of Commonwealth witnesses. Mr. Gens' name appeared on this list. Mr. Gens telephoned the assistant attorney general in charge of the case to inquire about the subject matter and relevance of his testimony. The Commonwealth informed Mr. Gens that it was interested in certain checks drawn on the nursing home's account, payable to Mr. Gens, subsequent to Shraiar's initial withdrawal from the PNA account.

According to Mr. Gens, the parties agreed to avoid the problem of defense counsel's serving as a Commonwealth witness by stipulating to certain facts. The parties thus entered into a stipulation to the effect that Mr. Gens had received a total of $20,385 from the nursing home during the period between January 30, 1981, and July 10, 1981. This sum rep-

---

as amended, (1983). Section 456.804 (C) provides that "[w]hen the facility is Trustee for the PNA funds, the funds must be used only for the patients' personal needs. . . . At no time may any funds be withdrawn from the Personal Needs account for use in the business or operating expense of the facility or for the personal use of any employee, administrator, owner or relative thereof."

resented $14,400 in repayment of a personal loan from Mr. Gens to Shraiar, and $5,985 in legal fees for prior representation.

Prior to entering into this stipulation, Mr. Gens informed Shraiar of the purpose and necessity of the agreement. Shraiar agreed to the stipulation. The stipulation was signed by the prosecutor, and by Mr. Gens on behalf of Shraiar. The stipulation was read to the jury during trial. The judge, prior to admitting this stipulation, did not discuss with Shraiar the possibility of a conflict of interest or question the defendant regarding his knowing consent to Mr. Gens' representation.

During closing argument, the Commonwealth relied on the stipulation as a basis for arguing that Shraiar intended to permanently deprive the PNA account of the withdrawn funds. Specifically, the Commonwealth argued that Shraiar's payment of $20,385 to his lawyer during the period that the PNA account remained outstanding, as well as other self-serving actions by Shraiar during this period,[2] belied the defendant's stated intention to repay the account.

1. *Ineffective Assistance of Counsel.*

Shraiar claims that he was denied the effective assistance of counsel due to his trial counsel's alleged role as a Commonwealth witness, and his participation in the transactions which formed the basis for the charges against Shraiar. This case presents a novel and rather complex question of conflict of interest. Most of our prior decisions in this area involve either the joint representation of codefendants with inconsistent lines of defense, or the dual representation of a defendant and an adverse witness. See *Commonwealth* v. *Leslie,* 376 Mass. 647, 653 (1978), cert. denied, 441 U.S. 910 (1979). In the present case, however, the alleged conflict of interest derives from defense counsel's personal involvement in the subject matter of the criminal prosecution. Nonetheless, our prior opinions

---

[2] Evidence introduced at trial indicates that Shraiar placed his wife on the payroll of the nursing home, increased his own salary, and withdrew money from the nursing home operating account for personal automobile payments and an electric bill of his pharmacy.

provide us with guidance for the resolution of the issues in this case.

An element of the fundamental right to counsel under art. 12 of the Massachusetts Declaration of Rights is the defendant's right to the full and undivided loyalty of his attorney. A defendant is entitled to the untrammeled and unimpaired assistance of counsel free from any conflict of interest. *Commonwealth* v. *Davis,* 376 Mass. 777, 780 (1978). Where a genuine conflict of interest exists, the defendant's conviction must be reversed. Once a genuine conflict is shown, the defendant is not required under art. 12 to shoulder the additional burden of proving actual prejudice or an adverse effect on his counsel's performance.[3] *Commonwealth* v. *Hodge,* 386 Mass. 165, 169-170 (1982). *Commonwealth* v. *Soffen,* 377 Mass. 433, 437 (1979). However, where only a "potential" or "tenuous" conflict is demonstrated, the conviction will not be reversed except upon a showing of material prejudice. See *Commonwealth* v. *Edgerly,* 390 Mass. 103, 108 (1983); *Pisa* v. *Commonwealth,* 378 Mass. 724, 729 (1979).

The burden lies with the defendant to prove that a genuine conflict of interest existed. *Commonwealth* v. *Bolduc,* 375 Mass. 530, 541 (1978). *Commonwealth* v. *Walter,* 396 Mass. 549, 554 (1986). The defendant is obliged to present demonstrative proof detailing both the existence and the precise character of this alleged conflict of interest; we will not infer a conflict based on mere conjecture or speculation. *Davis, supra* at 781; *Commonwealth* v. *Adams,* 374 Mass. 722, 731 (1978). An "actual" or "genuine" conflict of interest arises where the "independent professional judgment" of trial counsel is impaired, either by his own interests, or by the interests of another client. See *Commonwealth* v. *Michel,* 381 Mass. 447, 451 (1980); S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981).

---

[3] Our standard for conflict of interest claims under the Massachusetts Declaration of Rights diverges from the Federal constitutional standard, under which the defendant must prove both an actual conflict of interest, and an adverse effect on the lawyer's performance. *Cuyler* v. *Sullivan,* 446 U.S. 335 (1980). See *Commonwealth* v. *Hurley,* 391 Mass. 76, 81 (1984); *Commonwealth* v. *Hodge,* 386 Mass. 165, 169 (1982).

We now turn to Shraiar's contentions regarding the conduct of Mr. Gens. First, Shraiar argues that Mr. Gens in effect served as a Commonwealth witness against the defendant. Generally, the very nature of an attorney's duty of allegiance and undivided loyalty to his client forecloses him from simultaneously serving as both defense counsel and prosecution witness, where the attorney's testimony will prejudice the defendant. See *United States* v. *Cortellesso,* 663 F.2d 361 (1st Cir. 1981); S.J.C. Rule 3:07, DR 5-102 (B), as appearing in 382 Mass. 780 (1981).[4] A genuine conflict of interest arises whenever trial counsel is called upon to give testimony adverse to his client. The policy against trial counsel's simultaneously serving as a witness normally precludes an attorney even from testifying on *behalf* of his client, due to the incompatible roles of witness and advocate. See *Commonwealth* v. *Rondeau,* 378 Mass. 408, 415 (1979) (appearing as witness would place trial counsel in unseemly position of arguing own credibility), citing S.J.C. Rule 3:07, DR 5-102 (A).[5] See also *Black* v. *Black,* 376 Mass. 929 (1978).

No conflict of interest arose in the present case because Mr. Gens, although placed on the list of Commonwealth witnesses, was never actually called to testify. Cf. *Commonwealth* v. *Walter,* 396 Mass. 549, 557 (1986) (no conflict of interest where defense counsel represented scheduled witness who did not ultimately testify). Mr. Gens merely entered into a stipulation on behalf of his client as to facts within their joint

---

[4] Rule 3:07, DR 5-102 (B), provides as follows: "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

[5] Rule 3:07, DR 5-102 (A), now appearing at 382 Mass. 780 (1981), provides as follows: "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101 (B) (1) through (4)."

knowledge. Trial counsel does not become a "witness" by entering into such a stipulation. Stipulations are a common and appropriate means of avoiding the conflict of interest problems inherent in the advocate-witness situation. See *United States* v. *Cortellesso,* 663 F.2d 361, 363 (1st Cir. 1981) (suggesting that defense attorney could have avoided being disqualified due to his role as a prosecution witness by stipulating to fact at issue). Without this device, trial counsel would be able to maneuver the withdrawal of his adversary simply by scheduling him to testify on a trivial or uncontested matter. See Developments in the Law — Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1289-1290 (1981). See also *Serody* v. *Serody,* 19 Mass. App. Ct. 411, 414 (1985).

Shraiar argues that under the circumstances the stipulation regarding payments made to Mr. Gens amounted, for the purpose of the advocate-witness rule, to "testimony" by the attorney against his client. Shraiar relies on a decision of the United States Court of Appeals for the Third Circuit to support this proposition. In *Government of the V. I.* v. *Zepp,* 748 F.2d 125 (1984), the defendant was charged with possession of a controlled substance and destruction of evidence. Narcotics agents investigating the defendant's home heard a toilet flush while the defendant was in her home with her attorney. Cocaine was subsequently recovered from the septic tank. *Id.* at 128. At trial, the defendant was represented by the same attorney who was present in the defendant's home during the alleged destruction of evidence. To avoid being called as a prosecution witness, defense counsel stipulated to the fact that, if called as a witness, he would testify that he never flushed the toilet on the occasion in question. *Id.* at 129. The Court of Appeals reversed the defendant's conviction, on the ground that her attorney's stipulation created a conflict of interest, thus depriving the defendant of her right to the effective assistance of counsel under the Sixth Amendment. *Id.* at 139.

The decision in *Zepp* is readily distinguishable from the case at bar. In *Zepp,* defense counsel personally entered into a stipulation regarding what his testimony would be, were he to take the stand. Thus, regardless of the fact that he never ap-

peared on the witness stand, defense counsel did in effect. "testify" against his client. By contrast, the stipulation admitted at Shraiar's trial was entered into by the parties themselves, and involved only the underlying facts as they related to Mr. Gens, and not the substance of his proposed testimony. Secondly, defense counsel in *Zepp* was the sole source of some of the incriminating evidence against his client, due to the fact that he was the only other person in the house at the time of the alleged destruction of evidence. The attorney's stipulation that he never flushed the toilet was thus a necessary link in the chain of evidence against the defendant. In the present case, however, the parties stipulated to facts which, although directly involving Mr. Gens, could readily have been proved through the cancelled checks retained by the bookkeeping department of the nursing home. The stipulation thus involved facts which were largely uncontested, and could have been proved through another source. Use of a stipulation does not give rise to a per se conflict of interest under the advocate-witness rule, where the facts stipulated to are uncontested, and could be obtained from other sources.

Next, Shraiar argues that Mr. Gens was laboring under a genuine conflict of interest due to his participation in the transactions which formed the basis for the larceny charges against Shraiar. Shraiar contended for the first time in his motion for new trial, and affidavit in support thereof, that Mr. Gens actually advised Shraiar to withdraw money from the PNA account. If this statement of facts were true, Shraiar would be correct in his assertion that a conflict of interest existed. A conflict of interest normally arises whenever a defense attorney is himself culpable for the crimes charged against his client. See *United States* v. *Cancilla,* 725 F.2d 867, 870 (2d Cir. 1984) (counsel himself engaged in criminal acts which vigorous defense would have exposed); *Nichol* v. *State,* 309 N.W.2d 468, 471 (Iowa 1981) (conflict where defense counsel himself frequented "house of ill fame" run by defendant); *Commonwealth* v. *Duffy,* 483 Pa. 170, 173 (1978) (conflict of interest where alleged at trial that defense counsel was in receipt of stolen property). Cf. *Commonwealth* v. *Stirk,* 16 Mass. App. Ct. 280

(1983), aff'd, 392 Mass. 909 (1984). Trial counsel's interest in avoiding public disclosure of his complicity might well diverge from his client's interest in testifying or otherwise negotiating a plea. In this case, for instance, Shraiar argues that he had a viable defense of "good faith reliance on counsel," which was lost because of his attorney's role in the crime, and resulting refusal to allow him to testify.

Shraiar's argument would establish a genuine conflict of interest, were it based on a sound factual premise. However, the trial judge, in considering Shraiar's motion for a new trial, found as a matter of fact that Mr. Gens urged Shraiar to *refrain* from taking PNA funds, and advised the defendant to make prompt repayment of those already withdrawn. At a hearing on Shraiar's motion for new trial, both Mr. Gens and his daughter, Ms. Birenbaum, testified. Ms. Birenbaum testified that she advised the defendant "[n]o matter what you do, do not touch the patient-needs account." Mr. Gens testified that, upon discovering that Shraiar had diverted funds from the PNA account, he told his client "to get it back as soon as possible because that was an absolute no-no." In late 1981, when Mr. Gens learned that Shraiar had once again withdrawn patient funds, Mr. Gens told Shraiar, "Steve, you just sunk yourself." Apart from Shraiar's affidavit, there was no evidence presented that Mr. Gens was in any way responsible for the unlawful withdrawals. The judge's conclusion that there was no conflict of interest is thus warranted by the evidence. *Commonwealth v. Szczuka,* 391 Mass. 666, 676 (1984).

Although no genuine conflict of interest existed, Shraiar may nonetheless prevail on his ineffective assistance of counsel claim if he demonstrates a potential conflict which materially prejudiced his defense. See *Commonwealth v. Walter,* 396 Mass. 549, 559 (1986); *Commonwealth v. Soffen,* 377 Mass. 433, 437 (1979). As should be clear from the foregoing discussion, there certainly was a potential for conflict of interest in the attorney-client relationship between Shraiar and Mr. Gens.[6]

---

[6] At best, Mr. Gens was a passive beneficiary of the unlawful withdrawals made by Shraiar. It can be argued that Mr. Gens' subsequent representation

However, there is nothing in the record to suggest that Mr. Gens conducted anything less than a vigorous defense on behalf of Shraiar. Mr. Gens argued forcefully and consistently the defense of lack of intent. His decision to stipulate to the payments made to him by Shraiar was a viable trial tactic, given that these facts were uncontested, and that the information was readily available through the business records of the nursing home. See *Commonwealth* v. *Daigle,* 379 Mass. 541, 544 (1980) (court will not second guess reasonable tactics of trial counsel). Similarly, there is nothing in the record to support a conclusion that Mr. Gens' decision not to put Shraiar on the witness stand was based on other than sound tactical considerations: Mr. Gens testified at the hearing on Shraiar's motion for new trial that he advised Shraiar not to testify because Shraiar's conviction of mail fraud in Federal court could be used to impeach him, and because Mr. Gens' prior experience with Shraiar led him to believe that the defendant would be "a very poor witness."

Shraiar argues that Mr. Gens' representation deprived him of an otherwise available, substantial ground of defense. See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Specifically, Shraiar contends that but for Mr. Gens' representation, he would have testified, as he stated in his affidavit in support of a new trial, that he withdrew money from the PNA account in good faith reliance upon counsel. This claim is without merit. As has already been determined, there is no factual basis to the contention that Mr. Gens advised Shraiar to withdraw these funds. Secondly, even if Shraiar had pursued this tenuous line of defense absent representation by Mr. Gens, presumably Mr. Gens would have been called as a rebuttal

---

of Shraiar on the larceny charges was a violation of the attorneys' canons of ethics and disciplinary rules. See, e.g., S.J.C. Rule 3:07, Canon 9, DR 9-101, as appearing in 382 Mass. 698 (1981) (attorney must avoid "the Appearance of Impropriety") and S.J.C. Rule 3:07, DR 5-101 (A) (attorney should decline employment where independent professional judgment "may be" influenced by his "personal interests"). However, those issues are not before us for decision in this proceeding.

witness by the Commonwealth. This testimony could only have been damaging to Shraiar.

We conclude that there is no showing of material prejudice resulting from Mr. Gens' representation of Shraiar, and that the defendant therefore was not denied his right to the effective assistance of counsel.

2. *Evidence of Subsequent Uncharged Larcenies.*

Shraiar argues that the judge erred in admitting evidence of subsequent uncharged larcenies. Shraiar's defense at trial was that he intended to repay the PNA account. In furtherance of this defense, Shraiar introduced evidence of repayments which he had made to the PNA account in August and October of 1981, totalling $12,000.[7] In rebuttal, the Commonwealth introduced, over the defendant's objection, evidence of further withdrawals made from the PNA account in October and November of 1981, totalling $11,000. Shraiar argues that the judge erred in admitting evidence of these two subsequent withdrawals, since they had not been charged in the indictment.

Evidence of other misconduct, whether prior to or subsequent to the offense charged, is not admissible for the purpose of proving the bad character or criminal propensity of the accused. *Commonwealth* v. *Sawyer,* 389 Mass. 686, 696 (1983). *Commonwealth* v. *Clifford,* 374 Mass. 293, 298 (1978). However, where evidence of other offenses is relevant to some material issue in the case, its admission rests in the sound discretion of the judge. *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982) (earlier acts of violence on day of murder relevant to intent of defendant). *Commonwealth* v. *Caine,* 366 Mass. 366, 370-371 (1974) (evidence of gun theft one week prior to murder relevant to issue of premeditation). In this case, evidence of subsequent withdrawals was probative of Shraiar's intent to deprive the PNA account permanently of the funds in question. The judge did not abuse his discretion in admitting this evidence.

---

[7] Evidence introduced at trial indicates that the Attorney General's office began its investigation of the home in August, 1981.

The judgments of conviction and the order denying Shraiar's motion for new trial are affirmed.

*So ordered.*