COMMONWEALTH *vs.* BARRY W. BURBANK.

No. 88-P-557.

Hampden. January 18, 1989. — March 8, 1989.

Present: ARMSTRONG, SMITH, & FINE, JJ.

*Practice, Criminal,* Assistance of counsel, Pretrial conference, Judicial discretion, Continuance. *Constitutional Law,* Assistance of counsel, Confrontation of witnesses. *Conflict of Interest. Attorney at Law,* Conflict of interest, Admission pro hac vice. *Due Process of Law,* Continuance. *Evidence,* Previous testimony of unavailable witness. *Witness,* Unavailability.

A trial judge who denied a defendant's motion for a two-month continuance of his scheduled trial for murder to permit him to be represented by a certain out-of-State attorney was warranted in concluding that the defendant had not been deprived of the right to counsel of his choice by reason of a genuine conflict of interest and alleged improper actions on the part of his one-time private attorney and court-appointed standby counsel at trial, where nothing in the record suggested that at the trial, at which the defendant chose to proceed pro se, the defendant's standby counsel had his judgment affected by any interest adverse to the defendant's, that as regular counsel he would have had his judgment so affected, or that any possible conflict influenced him not to press the defendant's interest in obtaining a continuance. [103-105]

The judge who heard a defendant's motion for a two-month continuance of his scheduled trial for murder to permit him to be represented by a certain out-of-State attorney was warranted in concluding that the defendant's right to counsel of his choice had not been abridged by reason of his exclusion from a pretrial conference scheduled by the judge to ascertain who would represent the defendant at trial, where the defendant was heard regarding his request for a continuance soon after the conference, and where it was unlikely that any remarks at the conference swayed the judge towards denying the continuance. [105-106]

A judge did not abuse his discretion in denying a defendant's motion for a two-month continuance of his scheduled trial for murder to permit him to be represented by counsel of his choice, an out-of-State attorney, where it appeared that the judge properly balanced the needs for efficient trial administration and trying cases within reasonable time limits against a concern for protecting the defendant's constitutional rights. [106-108]

A criminal defendant, who was intelligent and familiar with criminal trials, was held to have voluntarily waived his right to counsel at his trial for murder and other serious crimes where, after being denied a continuance to permit him to retain a certain out-of-State attorney, he declined the services of court-appointed counsel who was prepared to represent him competently and, despite the judge's warnings not to represent himself, chose to proceed pro se with court-appointed counsel standing by to assist him. [108]

At a retrial of indictments for murder and other serious crimes in which the judge allowed the prosecutor, over objection, to read to the jury the testimony of a Commonwealth witness at the defendant's first trial, describing how the defendant had obtained a gun used in the crime, the judge's findings that the witness was unavailable at the time of trial and that the Commonwealth had made a diligent and good faith effort to locate him were warranted and justified the use of the witness's prior recorded testimony. [109-110]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1980.

After review by the Supreme Judicial Court, 388 Mass. 789 (1983), the cases were retried before *John F. Moriarty, J.,* and a motion for postconviction relief, filed on December 23, 1986, was heard by him.

*John M. Thompson* for the defendant.

*Elizabeth R. Dunphy,* Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant appeals from his convictions of second degree murder and assault and battery by means of a dangerous weapon arising out of a 1979 shooting incident. In 1980, the defendant was convicted, based upon the same incident, of first degree murder, assault with intent to murder, and aggravated assault. Those convictions were reversed by the Supreme Judicial Court in April of 1983. *Commonwealth* v. *Burbank,* 388 Mass. 789 (1983). The facts relating to the incident are set out in that opinion. We affirm the more recent convictions and also the trial judge's subsequent denial of the defendant's motion for postconviction relief.

1. *Pretrial Matters.*

The defendant's principal contentions on appeal relate to alleged pretrial errors. He claims that the judge's failure to

grant him a two-month continuance deprived him of the right to counsel of his choice at trial. The denial of the continuance, he contends, was attributable to one or more of three prejudicial factors: a conflict of interest and improper actions on the part of Mr. Murray Shulman, his one-time private attorney and court-appointed standby counsel at trial; the defendant's exclusion from a pretrial conference scheduled by the judge to ascertain who was going to represent the defendant at trial; and an abuse of discretion by the trial judge. He also contends that he did not willingly waive his right to counsel at trial. We summarize the facts relevant to these contentions, which we take from the judge's findings on the motion for a new trial.

The defendant, having been found indigent, was represented at his first trial by court-appointed counsel, Edward Hurley. After the defendant was convicted, Mr. Hurley was permitted to withdraw from the case, and William Bennett was appointed to represent the defendant at a second trial. The judge granted a two-month continuance for Mr. Bennett to prepare for trial. The second trial ended in a mistrial on November 21, 1983. After the mistrial, Mr. Bennett negotiated a plea arrangement with the prosecutor whereby the defendant would plead guilty to manslaughter. The defendant rejected the arrangement, however, and decided to seek other counsel to represent him at the third trial.

Using funds borrowed from his family, the defendant engaged Gerald DiSanti and Murray Shulman as private counsel. Mr. Shulman was to represent the defendant at trial, and Mr. DiSanti was to provide pretrial consultation and research assistance. The attorneys' combined fee was to be $15,000, one third for Mr. DiSanti, and two thirds for Mr. Shulman. The first $10,000 was paid to the two attorneys in the specified proportions, and Mr. Shulman became counsel of record on February 8, 1984. On February 13, 1984, the judge granted a continuance until May 9, 1984, to allow Mr. Shulman time to prepare. On February 15, 1984, the judge granted the defendant's request for a change of venue from Hampden to Berkshire County. The case was formally transferred to Berkshire County on April 19, 1984. The calendars of both courts were adjusted

to accommodate this change, and arrangements were made to summon sufficient jurors who might have to be sequestered.

After filing his appearance, Mr. Shulman discussed the case with the defendant in jail on several occasions, conferred at length with the prosecutor and the defendant's prior attorneys, obtained a transcript of the first trial and ordered a transcript of the second trial, visited the scene of the crime, reviewed the district attorney's file, and filed a motion for bail review. The defendant, nonetheless, by mid-March, felt that Mr. Shulman had not spent enough time with him, had failed to act promptly in seeking reduced bail, and was unprepared to try the case.

Around March 23, 1984, the defendant discharged Mr. Shulman and Mr. DiSanti, informed them that he planned to retain other counsel, and requested that they return the fee paid to them. Mr. DiSanti, who had done little work on the case, immediately returned his portion of the fee. Mr. Shulman, who had done substantial work on the case, told the defendant that he felt he had earned a portion of the fee, but that he would be willing to discuss sharing the fee should new counsel file an appearance in the case. He further told the defendant that he was willing to withdraw his appearance, but he believed that the judge would not let him do so until new counsel appeared. Throughout March and April, Mr. Shulman continued preparing for trial and made no motion to withdraw.

A few days after discharging Mr. Shulman, the defendant contacted J. Tony Serra, a California attorney, in hopes of retaining his representation in the upcoming trial. Mr. Serra's associate, Randolph Daar, responded by mail on April 5, 1984, and requested that the defendant telephone their office. The defendant did so, and subsequently Mr. Daar telephoned the prosecutor, the trial judge's clerk, and Mr. Shulman about the possibility of obtaining a continuance in the case. He made inquiries of the Massachusetts Bar Association and the Massachusetts Board of Bar Examiners about entering an appearance in the State. Mr. Hurley was asked by Mr. Daar to serve as local counsel, but he declined. In an April 24, 1984, letter, of which copies were sent to the judge, the prosecutor and Mr.

Shulman, Mr. Daar informed the defendant that Mr. Serra was prepared to represent the defendant, but only if the case could be continued until July, 1984.

In response to Mr. Daar's April 24th letter, the judge arranged a conference on April 30, 1984, to which he summoned the district attorney, Mr. Hurley, and Mr. Shulman. The defendant was not present. At the conference, which was on the record, Mr. Hurley stated that he had declined to serve as local counsel in the case, and that he intended to urge the defendant to plead guilty. Mr. Shulman indicated to the judge that he had known about the problem with the California attorney for weeks, but had continued to prepare, and was now prepared, for trial on the assumption that he would end up trying the case. Mr. Shulman stated that he was not there to seek a continuance for the defendant. The judge instructed Mr. Hurley and Mr. Shulman to inform the defendant that he would not continue the trial date, and that the defendant could either have Mr. Shulman represent him, or he could represent himself, with Mr. Shulman serving as standby counsel.

On May 2, 1984, appearing with Mr. Shulman, the defendant was heard on a motion for a two-month continuance of the scheduled trial to permit him to be represented by Mr. Serra, counsel of his choice. The judge refused to grant the continuance. He told the defendant that he would consider allowing Mr. Serra to appear if Mr. Serra were to present himself for trial as scheduled; he could not promise to do so, however, as he knew nothing of Mr. Serra's qualifications and Mr. Serra was not a member of the Massachusetts bar. The judge strongly advised the defendant against proceeding pro se, but offered him only the choice of proceeding with Mr. Shulman or pro se, with Mr. Shulman acting as standby counsel. On May 4, 1984, the defendant, represented by Mr. Shulman, appealed the trial judge's denial of the defendant's motion for a continuance to a single justice of the Supreme Judicial Court, but his appeal was unsuccessful.

The third jury trial was held from May 9, 1984, to May 16, 1984. The defendant chose to proceed pro se, stating that he was representing himself "under duress" because he could not

obtain counsel of his choice. The court appointed Mr. Shulman as standby counsel and indicated on May 9, 1984, that Mr. Shulman would be compensated by the Commonwealth for all further work on the case. Mr. Shulman did not return any portion of the fee to the defendant, and he did not bill the Commonwealth for services as court-appointed standby counsel. The defendant, an intelligent young man who learned much about criminal trial practice at his first two trials, represented himself ably. He received substantial assistance from Mr. Shulman who spent several late evenings during the course of the trial at the jail coaching the defendant.

The judge concluded that Mr. Shulman was reasonably prepared as of March 23, 1984, and that the defendant's dissatisfaction with him was "not justified." He also concluded that Mr. Serra would probably not have been available to represent the defendant. He based that conclusion on the preliminary stage of the defendant's negotiations with Mr. Serra, Mr. Serra's failure to come to Massachusetts to assert his interest in representing the defendant, and the improbability of his being admitted pro hac vice to try a first degree murder case given that he was a California attorney not subject to Massachusetts disciplinary procedures. As to the propriety of Mr. Shulman's actions, the judge concluded that his failure to make a timely motion to withdraw was "perhaps misguided" but not motivated by financial self-interest. Mr. Shulman, the judge found, would have withdrawn and made an equitable adjustment of the fee upon new counsel's filing an appearance. The judge felt that continuing to prepare for trial, in light of the unlikelihood of a continuance, was proper.

Balancing all the factors, including the age of the case and the administrative problems which a delay would have caused, against the defendant's interest in having counsel of his choice at trial, the judge concluded that the requested two-month continuance should not have been granted either on April 30, 1984, or on May 2, 1984. Finally, the judge concluded that the defendant represented himself competently at trial, with the assistance of conscientious and prepared counsel who had no genuine conflict of interest, and that some success was

achieved in that the jury did not find first-degree murder. Accordingly, he denied the defendant's motion for postconviction relief.

a. *Conflict of interest.* In seeking to overturn the judge's ruling, the defendant first contends that Mr. Shulman had a conflict of interest which influenced him not to press the defendant's interest in obtaining a continuance. This alleged conflict arose out of the financial arrangements. Mr. Shulman had received his $6,500 share of the first $10,000 payment before the defendant discharged him on March 23, 1984. The defendant contends that Mr. Shulman's financial interest in retaining the funds he had been paid created a genuine conflict of interest in that he had an incentive to remain in the case at a time when the defendant wanted a continuance so that he could retain new counsel. That conflict, he argues, explains Shulman's failure to give the judge timely notification of his discharge, his failure to request a continuance at the April 30th conference, and his failure to return the unearned portion of the fee.

A defendant, as part of his fundamental right to counsel, has the right to the full and undivided loyalty of his counsel, free from any conflict of interest. See *Commonwealth* v. *Davis*, 376 Mass. 777, 780 (1978); *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986). When a genuine conflict of interest exists, the defendant's conviction must be reversed, regardless of whether the defendant's case was actually prejudiced or adversely affected. See *Commonwealth* v. *Soffen*, 377 Mass. 433, 437 (1979); *Commonwealth* v. *Hodge*, 386 Mass. 165, 169-170 (1982); *Commonwealth* v. *Shraiar*, 397 Mass. at 20. The defendant bears the burden of proving that a genuine conflict of interest existed, and must do so without relying on mere conjecture or speculation. See *Commonwealth* v. *Bolduc*, 375 Mass. 530, 541 (1978); *Commonwealth* v. *Walter*, 396 Mass. 549, 554 (1986); *Commonwealth* v. *Shraiar*, 397 Mass. at 20. A genuine conflict of interest arises when trial counsel's own interests, or those of another client, impair his independent professional judgment. See S.J.C. Rule 3:07, Canon 5, as appearing in 382 Mass. 779 (1981). See also *Commonwealth* v. *Michel*, 381 Mass. 447, 451 (1980); *Commonwealth* v. *Shraiar*, 397 Mass. at 20.

Although Mr. Shulman's handling of the matter after March 23d may be subject to criticism, the rules governing his conduct were not altogether free from doubt. Rule 62 of the Rules of the Superior Court, as amended effective September 1, 1980, provides in relevant part that "[a]n attorney shall not withdraw his appearance . . . except by express leave of court." Supreme Judicial Court Rule 3:07, DR 2-110(A)(2), as appearing in 382 Mass. at 774 (1981), further states that a lawyer must not withdraw "until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including . . . allowing time for employment of other counsel." Nonetheless, Mr. Shulman clearly had an obligation to withdraw upon discharge by his client (DR 2-110 [B][4]) and to return the unearned portion of the fee without delay (DR 1-110 [A][3]). See 382 Mass. at 775. In the circumstances, Mr. Shulman should at least have notified the trial judge promptly of the discharge and sought advice about his fee and the future course of his preparations.

The judge found, however, that Mr. Shulman's failings were not motivated by self-interest. Instead, the judge found that Mr. Shulman based his conduct on his interpretation of the rules and his knowledge from experience that the judge would not be likely to grant a continuance. If he was correct that a continuance would not be forthcoming, continued preparation was in the defendant's interest. The judge also found that Mr. Shulman was prepared to make an equitable adjustment of the fee as soon as new counsel appeared. The record indicates that this would have been satisfactory to Mr. Serra. There is no indication that the defendant found such an arrangement unacceptable at the time or that Mr. Shulman's retention of the fee made it difficult or impossible for the defendant to pay Mr. Serra's fee. As Mr. Shulman at that time had no interest adverse to that of the defendant, there was no genuine conflict of interest but, at most, a potential or tenuous one. The question then is, has the defendant shown beyond mere speculation that his rights were adversely affected as a result of the potential conflict of interest. See *Commonwealth* v. *Shraiar*, 397 Mass. at 20. See also Smith, Criminal Practice and Procedure § 907 (2d ed. 1983).

We do not agree with the defendant that he was prejudiced
by Mr. Shulman's failure to take steps to withdraw on March
23d or soon after that date. With no new attorney available
then to represent the defendant, the judge would surely not
have allowed Mr. Shulman to withdraw. Nor do we agree that
anything Mr. Shulman could have said or done at the April
30th conference would have resulted in a continuance. Word
had gone back to Mr. Serra even before the conference from
the trial judge's clerk that a continuance was not likely. It was
not necessary for Mr. Shulman to ask for a continuance at that
conference as the judge knew from Mr. Daar's letter of April
24th that the defendant wanted a continuance so that Mr. Serra
and not Mr. Shulman would represent him at trial. Throughout
the conference, the judge's position was that a continuance
would not be granted. We think it very unlikely that the judge
would have responded differently had a motion for a con-
tinuance been made three weeks before. Any possible conflict,
therefore, did not deprive the defendant of the continuance he
sought. Nor is there anything in the record to suggest that at
trial Mr. Shulman, as standby counsel, had his judgment af-
fected by any interest adverse to the defendant's, or that as
regular counsel he would have had his judgment so affected.

b. *Absence from the April 30th conference.* The defendant
next claims that he had a right to be present at the April 30th
pretrial conference, and that his interest in obtaining a con-
tinuance was adversely affected by his absence. The judge
called the conference for the purpose of clarifying the problem
of the defendant's representation in light of the April 24th
letter from Mr. Daar. While conferences to discuss routine
matters may be called in anticipation of trial without the neces-
sity of the defendant being present, the defendant had the right
to be present "to the extent that a fair and just hearing would
be thwarted by his absence." *Kentucky* v. *Stincer*, 482 U.S.
730, 745 (1987), quoting from *Snyder* v. *Massachusetts*, 291
U.S. 97, 108 (1934). With hindsight, it would have been prefer-
able for the defendant to have been present at the conference
as neither Mr. Shulman nor Mr. Hurley argued on the defend-
ant's behalf for a continuance, and Mr. Hurley's remarks could

be construed as disfavoring a continuance. Having received Mr. Daar's letter, however, the judge was well aware of the defendant's desire for a continuance. The judge stated his position against a continuance, and the reasons for that position, before Mr. Hurley made any remarks prejudicial to the continuance. Given both that the defendant was heard regarding his request for a continuance on May 2, 1984, soon after the conference, and the unlikelihood that any remarks at the April 30th conference swayed the judge towards denying the continuance, the defendant's absence, in our view, had no due process significance.

c. *Abuse of discretion.* The defendant contends that the trial judge abused his discretion in not granting a continuance to enable the defendant to have counsel of his choice. "A defendant has a right under the Sixth and Fourteenth Amendments to the United States Constitution to have considerable deference given to his choice of counsel to represent him at a trial in which his liberty is at stake. The right is not absolute, however, and on occasion it may be subordinate to the public's interest in the fair, efficient, and orderly administration of justice. See *Commonwealth* v. *Dunne,* 394 Mass. 10, 14 (1985); *United States* v. *Panzardi Alvarez,* 816 F.2d 813, 816 (1st Cir. 1987). The question whether to allow a continuance for change of counsel rests ordinarily in the sound discretion of the trial judge once he has made appropriate inquiry of the defendant as to the reasons for the request. See *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983); *United States* v. *Torres,* 793 F.2d 436, 440 (1st Cir.), cert. denied, 479 U.S. 889 (1986). 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' *Ungar* v. *Sarafite,* 376 U.S. 575, 589 (1964). See *Commonwealth* v. *Dunne,* 394 Mass. at 14." *Commonwealth* v. *Fogarty,* 25 Mass. App. Ct. 693, 697-698 (1988).

Considering the age of the case, the two prior trials, the administrative steps taken in anticipation of trial, the number of

attorneys the defendant had in the past, the fact that Mr. Shulman was competent, experienced, and prepared to try the case, the fact that a continuance had been granted for Mr. Shulman to prepare, and the lack of certainty that Mr. Serra would have been willing and able to try the case [1] even with the requested continuance, denial of the continuance was not an abuse of discretion. The trial judge indicated to the defendant that he would consider allowing him to be represented by Mr. Serra if he appeared ready for trial on the date set for trial.

The judge's inquiry into the reasons for the defendant's request may have been brief, but it was adequate. Compare *Commonwealth* v. *Moran*, 388 Mass. at 659. The defendant made his points that he was not satisfied with, and did not have confidence in, Mr. Shulman, and that he wanted to be represented by Mr. Serra. The judge properly balanced the needs for efficient trial administration and trying cases within reasonable time limits against a concern for protecting the defendant's constitutional rights. See *Commonwealth* v. *Tuitt*, 393 Mass. 801, 804-805 (1985); *Commonwealth* v. *Dunne*, *supra*; *Commonwealth* v. *Haas*, 398 Mass. 806, 815 (1986),

---

[1] Mr. Serra was not a member of the Massachusetts bar. General Laws c. 221, § 46A, inserted by St. 1935, c. 346, § 2, provides that "a member of the bar, in good standing, of any other state may appear, by permission of the court, as attorney or counselor, in any case pending therein, if such other state grants like privileges to members of the bar, in good standing, of this commonwealth." The statute has been interpreted to accord a judge broad discretion in deciding whether to allow an attorney to appear pro hac vice. A defendant does not have the right to be represented by a specific out-of-State attorney. See *DiLuzio* v. *United Elec. Radio & Mach. Wkrs. of America, Local 274*, 391 Mass. 211, 215-216 (1984); *Merles* v. *Lerner*, 391 Mass. 221, 223-224 (1984).

The judge found that the negotiations with Mr. Serra were in a preliminary stage, the defendant had no direct contact with Mr. Serra himself, neither Mr. Daar or Mr. Serra had ever come to Massachusetts in connection with the case, Mr. Serra would have to obtain permission to appear pro hac vice, he had yet to find local counsel to assist him, and he had not reached any fee arrangement with the defendant for taking the case. The judge also noted that it was unclear whether Mr. Serra had ever tried a case in the Commonwealth and should be permitted to appear pro hac vice in a first-degree murder trial. The judge noted that an attorney appearing pro hac vice would not be subject to the discipline of Massachusetts courts, and thus could easily delay the trial date by last minute notice of another trial.

and cases cited; *United States* v. *Poulack,* 556 F.2d 83, 86 (1st Cir.), cert. denied, 434 U.S. 986 (1977).

d. *Waiver of the right to counsel.* The defendant's final point is that he proceeded to trial pro se under duress, being faced with the "Hobson's choice" of representing himself or going to trial with counsel whom, for what he believed was good reason, he had discharged. See *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 53 (1976). No particular colloquy is required for waiver of the right to be represented by counsel, as long as the defendant is warned of the "dangers and disadvantages of self-representation." *Commonwealth* v. *Cavanaugh,* 371 Mass. at 53. See *Commonwealth* v. *Lee,* 394 Mass. 209, 216-217 (1985); *United States* v. *Hafen,* 726 F.2d 1, 6 (1st Cir. 1984). See also Smith, Criminal Practice and Procedure § 986 (2d ed. 1983). The judge advised the defendant repeatedly and in strong terms not to represent himself. The defendant responded, "I feel I should do it." The judge suspected that the defendant had been advised by Mr. Daar that if he elected to proceed pro se, after being denied a continuance to obtain counsel, he might have an appealable issue. The defendant was intelligent and thoroughly familiar with criminal trials. He understood "the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation." *Commonwealth* v. *Barnes,* 399 Mass. 385, 391 (1987), quoting from *Commonwealth* v. *Jackson,* 376 Mass. 790, 795 (1978). No further warning was likely to dissuade him from pursuing the course he was on. The judge offered the defendant the right to have Mr. Shulman represent him as court-appointed counsel. Having been offered counsel prepared to defend him competently and loyally at trial, his refusal of that representation amounts to a voluntary waiver of the right to counsel. See *Commonwealth* v. *Appleby,* 389 Mass. 359, 366-367, cert. denied, 464 U.S. 941 (1983); *Commonwealth* v. *Lee,* 394 Mass. at 216; *Maynard* v. *Meachum,* 545 F.2d 273, 278 (1st Cir. 1976). Contrast *Commonwealth* v. *Cavanaugh,* 371 Mass. at 51.

## 2. *The Conduct of the Trial.*

The defendant makes only one claim of error related to the conduct of the trial. The judge allowed the prosecutor, over objection, to read to the jury the testimony of David Avery, a Commonwealth witness at the defendant's first trial, describing how the defendant had obtained the gun used in the shooting. The defendant contends that admission of this testimony violated his rights under the confrontation clause of the Sixth Amendment to the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights. Before admitting the prior recorded testimony, the judge conducted a hearing to evaluate Avery's availability and the sufficiency of the Commonwealth's efforts to locate him. The Commonwealth's efforts to find Avery began in 1983 at the time of the second trial, which ended in a mistrial, and they continued until the day the prior testimony was admitted. These efforts consisted primarily of contacts to Avery's mother in Florida and father in Springfield, Massachusetts.[2] The judge found that Avery was unavailable at the time of trial and that the Commonwealth had made a diligent and good faith effort to locate him. Contrary to the defendant's contentions on appeal, the judge's findings were warranted and justified the use of Avery's prior recorded testimony. See *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982); *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 427-428 (1988). See also *Ohio* v. *Roberts*, 448 U.S. 56, 74-75 (1980). It is significant that the trial judge was familiar with the Commonwealth's earlier efforts to locate the witness, having presided over the second trial in 1983 and having found the same witness to be unavailable at that time. See *Commonwealth* v. *Siegfriedt*, 402 Mass. at 428. Moreover, nothing has

---

[2] Avery was a friend of the defendant's who was with him during the altercation preceding the shooting and accompanied him to Connecticut to obtain a gun. Avery was last seen by his mother before he left Florida, presumably for Springfield, to testify at the second trial. He never arrived. Over a month later, he called his mother from Virginia to say he was "heading west." Neither of the elderly parents heard from Avery after that.

been presented to show that Avery's earlier testimony, tested by cross-examination, was unreliable.

*Judgments affirmed.*

*Order denying motion for post-conviction relief affirmed.*