COMMONWEALTH *vs.* FRANCIS FALLON.

Suffolk. March 4, 1996. - June 27, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Expert opinion, Deposition. *Larceny. Practice, Criminal,* Judicial discretion.

At the trial of indictments for larceny and securities fraud, the judge properly ruled admissible evidence that the defendant had been incarcerated for contempt in a civil action for failure to disclose where the victim's money was, where that evidence was probative of the defendant's intent permanently to deprive the victim of her money, where the probative value outweighed any prejudice, and where the judge gave the jury appropriate limiting instructions. [95-98]

At a criminal trial there were no aggregate errors which rendered the proceedings fundamentally unfair. [98]

INDICTMENTS found and returned in the Superior Court Department on February 21, 1992.

The cases were tried before *Barbara J. Rouse,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barbara A. H. Smith* for the defendant.

*William J. Duensing,* Assistant Attorney General, for the Commonwealth.

LYNCH, J. A Superior Court jury convicted the defendant, Francis Fallon, on an indictment charging sixteen counts of larceny over $250 and one indictment charging securities fraud, stemming from his actions regarding approximately $3.6 million in assets entrusted to him by the victim, Lillian DiCarlo, under a contract for financial planning services. The defendant appealed, arguing that the trial judge erred in: (1) allowing references to the defendant's incarceration for contempt in a prior civil proceeding; (2) admitting testimonial and documentary evidence obtained from the defendant in the prior civil proceeding; and (3) admitting testimony of an expert witness for the Commonwealth. In addition, the defen-

dant argues that these errors combine to render the entire proceeding unfair.

The Appeals Court held that testimonial and documentary evidence from the civil trial was properly admitted, as was the expert testimony. However, the court concluded that the references to the defendant's incarceration for civil contempt was prejudicial error, reversed the judgments, and remanded the case for a new trial. *Commonwealth* v. *Fallon*, 38 Mass. App. Ct. 366 (1995). We granted both parties' applications for further appellate review.

We summarize the facts that the jury could have found from the evidence. The defendant was the principal of BSI Inc. (BSI) and provided financial planning services as one of several business enterprises. The victim was an eighty-one year old widow at the time of trial, who had received approximately $3.6 million from the sale of a piece of real estate which she had inherited from her husband.

The victim had known the defendant for many years and selected him to manage this money. On December 3, 1987, the victim and three of her five children, Alice E. Cataldo, William DiCarlo, and Peter DiCarlo, executed an agreement with the defendant, as principal of BSI.[1] The agreement was to be revocable within the first year, but thereafter, for a period of thirty years, the defendant would retain exclusive control over the victim's assets. On December 4, 1987, the day after the agreement was executed, the money at issue was deposited in a Bank of Boston account entitled "Mrs. Lillian DiCarlo Escrow Account by Francis Fallon, Agent."

For the next five months the victim received several monthly payments of $1,600. She also received statements from the defendant on BSI stationery showing, among other transactions, the disbursement of "gifts" by the defendant of $5,000 each to William and Dale DiCarlo, of $30,000 to William DiCarlo, and of $40,000 each to Alice Cataldo, Peter DiCarlo, and to the victim herself.[2] By December, 1989, the victim became apprehensive and suspicious, as the types of

---

[1]Although the record is not clear, it would appear that the victim gave to her children equal shares in the inheritance. Two of her children, Joseph and Michael DiCarlo, opposed their mother's agreement with the defendant and did not join in it.

[2]The victim testified that, in fact, she never received $40,000 from the defendant.

investments shown on the statements she received did not make sense to her. "The money was going down, but nothing was coming to me," she stated. She demanded the return of her money. When the defendant refused, she filed suit in the Superior Court in June, 1990, against, among others, the defendant, BSI, and her children, William, Peter, and Alice, who supported the defendant and who did not want the 1987 agreement upset.

During pretrial discovery in the civil suit, the defendant was repeatedly asked to provide BSI documents and records of the transactions involving the victim's assets. On encountering resistance and occasional outright refusal, the victim finally sought and obtained an order from a Superior Court judge compelling the defendant to produce the requested documents and to appear for a deposition. The order was entered November 1, 1990.

In response, the defendant provided certain records which failed to comply fully with the judge's order. After a hearing on a motion for sanctions under Mass. R. Civ. P. 37 (b), as amended, 390 Mass. 1208 (1984), the defendant was deposed in three separate sessions between January, 1991, and February, 1991. After continued failure to comply with the discovery orders the defendant was found in civil contempt and was committed to jail for two months. The victim did not recover any of her money.

The defendant was then indicted on the larceny and securities fraud charges. During the criminal trial, the evidence in the Commonwealth's case tended to show a series of complex transactions that placed the victim's funds beyond her reach. The Commonwealth introduced financial records to show a scheme on the defendant's part to create misleading "paper trails." The Commonwealth also introduced evidence that the defendant, at times, used the victim's money directly for his own purposes, such as his purchase and redevelopment of property at 91-93 Beach Street, Revere, and his deposit of funds into the account of several small businesses he controlled. The defendant's former accountant, who left to set up his own company in 1988, received a $100,000 loan from BSI, from the victim's funds, interest-free for the first thirty months. Finally, the Commonwealth produced evidence that the pattern of sham transactions quickened just after the victim demanded her money in 1990. During the six-month

period following the filing of the suit, some $600,000 of the victim's funds were transferred to the defendant and to related parties, and on the same day suit was filed, the defendant paid an early withdrawal penalty on a $100,000 certificate of deposit representing part of the victim's funds. Following six days of trial, the jury, on September 17, 1993, returned guilty verdicts on both indictments.

*Reference to civil contempt and previous incarceration.* The defendant claims that he was unduly prejudiced by the jury's learning of the contempt judgment and his incarceration with regard to the civil proceedings.

During a bench conference before the beginning of trial, the judge ruled that the Commonwealth could refer in its opening to the previous civil proceeding, as well as the defendant's incarceration for contempt. The judge did not allow evidence of the final default judgment against the defendant to be introduced.

The Commonwealth referred to the defendant's incarceration for contempt in both its opening[3] and its closing[4] arguments. Defense counsel also referred to this issue in his opening argument.[5] The only testimony on the subject was

---

[3]During its opening statement, the Commonwealth referred to the defendant's incarceration stating that "the defendant was held in contempt because he wouldn't tell [the victim] where the money went and he went to jail for two months in the summer of 1991, because he wouldn't tell [the victim] where the money was."

[4]In its closing remarks, the Commonwealth again made reference to the defendant's imprisonment. The Commonwealth stated: "And under what principle is it that he's allowed to not tell [the victim] where the money is when a Civil Judge says give it back? This defendant went to jail for two months for one and only one reason. [B]ecause he had a million and a half of [the victim's money] and he didn't want to give it back. That's why he went to jail."

On defense request, the judge instructed the jury that, because there was no evidence in the civil case that the defendant had been ordered to give the victim's money back, the jury were not to consider that statement. The jury are presumed to have followed such instructions. *Commonwealth* v. *Leno,* 374 Mass. 716, 719 (1978).

[5]Defense counsel stated in opening arguments: "What [the defendant] did, and the evidence is going to show this, that when he went before [the civil trial judge who] cited him with civil disobedience, he said, 'Judge, I've given everything I can give you. I've got some obligations under the contract.' And he went away for sixty days. He did it willingly, gladly, for a principle. That's what the evidence is going to show."

introduced by defense counsel during cross-examination of the attorney who had handled the victim's civil case.[6]

Since it is unlikely that defense counsel would have introduced the evidence had the judge not ruled at the beginning of the trial that it was admissible, we consider, on the merits, the defendant's claims that this evidence should not

---

[6]The following exchange took place between defense counsel and the witness:

> DEFENSE COUNSEL: "Now, ultimately, after all these depositions, and after the contempt hearing with [the civil trial judge], the bottom line was that [the judge] found [the defendant] in contempt, is that right?"
>
> THE WITNESS: "That's correct"
>
> DEFENSE COUNSEL: "Sent him to jail for sixty days, is that right?"
>
> THE WITNESS: "Correct."
>
> DEFENSE COUNSEL: "And [the defendant] said 'I'll gladly go,' didn't he?"
>
> THE WITNESS: "I don't think he said that."
>
> DEFENSE COUNSEL: "Did he say: 'I'm standing up for a principle and, by God, I'll go for as long as I have to'?"
>
> THE WITNESS: "He never said that."
>
> DEFENSE COUNSEL: "You never heard him say that?"
>
> THE WITNESS: "I never heard him say that."
>
> DEFENSE COUNSEL: "I've no further question [at this time]."

In a conversation at sidebar defense counsel stated that it was his intention to show that the defendant was a principled man and only refused to turn over information to honor contracts of privacy: "However, as to what I intend to come out with. All I want to do is bring out that there was a civil case; that he fought tooth and nail at the depositions, depending on what [the prosecutor] wants to bring out, she doesn't bring that much out. I won't do that, and show that he did go to jail, because we admitted that and we said so in our opening statement. And that he made it clear to [the attorney for the victim in the civil action] that he did so because he believed in the principle. That's all I'm looking for."

have been admitted. The defendant argues that this is prior misconduct evidence that is lacking in probative value and highly prejudicial.

For the first time on appeal, defense counsel also argues that evidence of the defendant's contempt was impermissible, bad character evidence. Even if we consider this argument on the merits, the defendant's cause is not advanced. In this context it is not significant that the evidence is characterized as showing bad character, as being evidence of prior misconduct, or demonstrating a propensity to commit the crimes. "It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose." *Commonwealth* v. *Helfant,* 398 Mass. 214, 224 (1986). Where such evidence is relevant to some material issue in the case, its admission rests in the sound discretion of the judge. *Commonwealth* v. *Shraiar,* 397 Mass. 16, 26 (1986). The judge ruled that the evidence was relevant on the issue of fraud, misrepresentation, and fraudulent intent. We agree. The crime of larceny requires the Commonwealth to prove that the defendant intended permanently to deprive the victim of her money. Evidence that the defendant refused to tell where the money was during the discovery process and that he was willing to go to jail rather than reveal what he had done with it is probative of such intent.

The defendant argues that the probative value of the evidence is outweighed by the danger of undue prejudice. This determination is for the trial judge and will be overturned only on a showing of abuse of discretion. *Commonwealth* v. *Robertson,* 408 Mass. 747, 750 (1990). In *Commonwealth* v. *Shraiar, supra,* we concluded that evidence of withdrawals from a special account subsequent to indictment was probative of a defendant's intent permanently to deprive. In the present case the judge was also acting well within her discretion in ruling that the prejudice arising from such evidence did not outweigh its probative value. See *Commonwealth* v. *Fordham,* 417 Mass. 10, 23 (1994) (prior assault by defendant on victim admissible in murder trial); *Commonwealth* v. *Robertson, supra* (evidence that defendant had previously beaten victims admissible in murder trial); *Commonwealth* v. *Young,*

382 Mass. 448, 462-463 (1981) (evidence that defendant and victim were involved in drug transactions admissible in murder trial).

Furthermore, the judge instructed the jury on the differences between civil and criminal proceedings, cautioning them that there is a lesser standard of proof in a civil proceeding. She warned the jury that they could only consider evidence of the civil suit to the extent that they found it relevant on the elements of the crimes charged. There was no error.

*Deposition and expert witness testimony.* We agree with the reasoning of the Appeals Court that: (1) there was no evidence that the deposition testimony was involuntary; (2) the issue of voluntariness was not a live issue at trial; and (3) the testimony of the Commonwealth's expert witness was properly admitted.

We conclude, therefore, that the judge did not abuse her discretion in admitting the evidence discussed above. Thus, there were no aggregate errors which rendered the proceedings fundamentally unfair. *Commonwealth* v. *Fallon*, 38 Mass. App. Ct. 366, 374-375 (1995).

*Judgments affirmed.*