# G. D. Mathews & Sons Corporation *vs.* MSN Corporation.

No. 01-P-1277.

Suffolk. October 22, 2001. - February 22, 2002.

Present: Armstrong, C.J., Dreben, & Mills, JJ.

*Attorney at Law,* Attorney-client relationship, Disqualification, Conflict of interest. *Conflict of Interest. Waiver. Practice, Civil,* Notice of appeal.

Where an attorney-client relationship existed in a previous lawsuit between the plaintiff in the present action and a law firm now representing the defendant in this action, and where the law firm's previous representation of the plaintiff and current representation of the defendant were adverse and substantially related, a Superior Court judge correctly concluded that the law firm's continued representation of the defendant presented a strong temptation that could compromise the law firm's duty to preserve confidential information provided by the plaintiff during the course of the previous action, and properly allowed the plaintiff's motion to disqualify the law firm. [20-22]

In a civil action in which the plaintiff sought to disqualify the law firm representing the defendant on the ground that the present action had a substantial relationship to a previous lawsuit in which the law firm represented both of the parties in this action, the judge could have reasonably concluded that information withheld by the defendant was relevant to the plaintiff's fair determination of whether to press the disqualification issue, and there was no unreasonable delay by the plaintiff in raising the conflict issue. [23-24]

An appeal of an order disqualifying the law firm representing the defendant in a civil action was treated by this court as timely, where a clerical ambiguity in the docket sheet from the Superior Court clerk's office, indicating two distinct dates as possible "entry" dates, either of which could be argued as operative, was clearly not the responsibility of either party, and where neither party suffered any unfair prejudice due to the ambiguity. [24-26]

Civil action commenced in the Superior Court Department on October 29, 1999.

A motion to disqualify defendant's counsel was heard by *Allan van Gestel,* J.

*Carlos Perez-Albuerne* for the defendant.

*David E. Lurie* for the plaintiff.

MILLS, J. MSN Corporation, doing business as Budd Foods (MSN), appeals from a Superior Court judge's order allowing G. D. Mathews & Sons Corporation's (Mathews's) motion to disqualify Choate, Hall & Stewart (Choate) from acting as counsel for MSN in this action. On appeal, MSN claims that the judge's allowance of Mathews's motion to disqualify was improper because (1) Choate's former representation of Mathews is not substantially related to the present litigation and (2) Mathews waived any potential challenge to Choate's representation by failing timely to raise the conflict issue.[1] We affirm the order.

The underlying action involves claims by Mathews that MSN violated a distribution agreement appointing Mathews as its exclusive distributor of fresh chicken pies in the New England area. Choate represents MSN in that action and on this appeal.[2] Mathews requested Choate's disqualification, asserting that "the present case has a substantial relationship to a previous lawsuit in which Choate . . . represented both Mathews and [MSN]." Matthews based its request upon Mass.R.Prof.C. 1.9, 426 Mass. 1342 (1998). We consider the facts as recited in the trial judge's memorandum and in relevant papers in the record.

1. *Background.* In 1979, Irving Budd, the founder and former owner of Budd Foods, Inc., sold his company to MSN, which continued to manufacture Budd's food items, including chicken pies and other ready-made meals. The transaction included a noncompetition agreement executed by Budd. At that time Mathews, also a manufacturer of chicken pies, was MSN's principal competitor in the New England chicken pie market. In 1987 MSN and Mathews entered into a distribution agreement (1987 agreement) under which Mathews would stop selling its "Mathews" labeled chicken pies and become the exclusive

---

[1] Briefed by the parties as a third issue is Mathews's assertion that the appeal was filed late. Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). We conclude that the notice of appeal was timely and will address this issue below.

[2] A single justice of this court stayed the trial court proceedings and so much of the disqualification order as would prevent Choate from pursuing MSN's appeal of that order.

distributor of certain MSN products to specified supermarket accounts allocated between MSN and Mathews.

In January of 1995, MSN commenced an action (1995 action) against Irving Budd and his newly formed company, SIB Foods, Inc. (collectively SIB). The 1995 action arose out of MSN's purchase of Irving Budd's chicken pie business in 1979. MSN alleged that SIB had violated the terms of the 1979 business sale by starting a new chicken pie company.

SIB filed a counterclaim against MSN and also asserted numerous third-party claims against Mathews and its principal, including an allegation of a civil conspiracy between MSN and Mathews.[3] Mathews accepted MSN's offer to have Choate, its general counsel, represent Mathews in the 1995 action, at MSN's expense. Choate subsequently represented both MSN and Mathews with respect to all of SIB's allegations.

The 1995 action was settled in 1997. While complete details of the settlement are not reflected in the record, it is clear that MSN purchased SIB, Irving Budd's new business. All claims, counterclaims, and third-party claims were dismissed with prejudice. Mathews was not a signatory to the settlement agreement and was not provided with copies of the settlement documents.

In 1998, MSN and Mathews executed an amendment to the 1987 agreement, and during those negotiations other problems developed. In 1999, Mathews commenced the current action against MSN alleging breach of contract and other claims concerning the 1987 agreement as amended (1999 action). Our discussion will include additional facts as appropriate.

2. *The disqualification.* Motions to disqualify must be considered in light of the principle that courts "should not lightly interrupt the relationship between a lawyer and her client." *Adoption of Erica*, 426 Mass. 55, 58 (1997). "[A]s a prophylactic device for protecting the attorney-client relation-

---

[3]SIB also asserted that MSN, Mathews, Mathews's principal and others interfered with its advantageous business relationships; engaged in acts constituting a conspiracy or combination in restraint of trade; and committed acts constituting unfair competition in violation of Massachusetts and Federal law in an attempt to prevent SIB from introducing its newly developed chicken pies into the New England market.

ship, . . . courts should hesitate to impose [disqualification] except when absolutely necessary." *Ibid.* (Citations omitted.)

However, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Mass. R.Prof.C. 1.9(a). Prohibition of successive representation arises from "the attorney's duty . . . to preserve his client's confidences and secrets." *Bays* v. *Theran,* 418 Mass. 685, 691 (1994). That duty survives the termination of the attorney-client relationship. *Ibid.*

> "Under the 'substantial relationship' test, a subsequent representation is proscribed 'on the sole ground that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client. The [former] client need never prove that the attorney *actually* misused the confidences to the client's disadvantage. Instead he must prove only the existence of the tempting *situation* by showing (1) that an attorney-client relationship existed in the former legal representation, and (2) that the former and current representations are both adverse and substantially related.' . . . Thus, the 'substantial relationship' test operates by assuming that confidences were transmitted in the former attorney-client relationship."

*Ibid.,* quoting from Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1315 (1981).

Here, the 1987 agreement between MSN and Mathews was at the core of the joint representation in the first case, and is at the core of the adverse representation in the second case. In the 1995 action, Choate's joint representation of MSN and Mathews involved the defense of claims in which SIB sought substantial damages and injunctive relief. SIB alleged a civil conspiracy between MSN and Mathews, and alleged that Mathews had made false statements to customers. The conspiracy allegations involved Mathews's relationship with MSN as well as with

Mathews's allocated customers and the allocation of customer accounts between MSN and Mathews.

From 1995 to 1997, Choate, as competent counsel, would necessarily have needed to learn and understand what the parties intended by virtue of their 1987 agreement in order to defend against SIB's claims. Although the 1987 agreement may not initially have been central to the litigation between SIB and MSN, it constituted the unambiguous connection between Mathews and the 1995 action, forming the basis for Mathews's joinder under the third-party claim.

In the 1999 action, Mathews alleged breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, violations of G. L. c. 93A, and tortious interference with contractual relations, all of which specifically concern the 1987 agreement as amended. Thus, the 1987 agreement is central to both the current dispute between MSN and Mathews and to the conspiracy claims by SIB against Mathews in the 1995 action.

Because an attorney-client relationship existed between Mathews and Choate, and the former and current representations are adverse and substantially related, the judge correctly concluded that Choate's continued representation of MSN presented a "strong temptation" that could compromise Choate's duty to preserve confidential information provided by Mathews during the course of the 1995 action.[4] See *Bays* v. *Theran*, 418 Mass. at 691.

---

[4]In a footnote, MSN further argues that Choate should not be disqualified because Mathews was merely an "accommodation client" in the 1995 action and that Mathews therefore had no reason to believe that any information it gave to Choate would be confidential. MSN cites no Massachusetts authority and relies upon two Federal cases and a treatise, see Restatement (Third) of the Law Governing Lawyers § 132 comment i, at 385-386 (1998). MSN appears to argue that Mathews, in the circumstances of this case, impliedly consented to any further representation of MSN by Choate, regardless of Mathews's adverse interest.

To the extent that the footnote rises to the level of appellate argument, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Sarvis* v. *Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 97 n.11 (1999), we find no error in the motion judge's failure to address an issue that we find without merit on the facts in the record.

3. *Waiver.* MSN next argues that Mathews waived any potential challenge to Choate's representation by failing timely to raise the conflict issue. Ample evidence supports the judge's ruling that Mathews's objection was timely.

Mathews filed its complaint on October 29, 1999, and MSN filed its answer on November 18, 1999. After reviewing Mathews's deposition testimony in the 1995 action, on March 24, 2000, Mathews's counsel sent a letter to Choate suggesting that a conflict of interest might exist.[5] Choate responded on April 12, 2000, explaining its conclusion that no conflict existed. After additional communications, on June 12, 2000, Choate provided Mathews with copies of pleadings from the 1995 action but withheld deposition testimony and the 1997 settlement agreement.[6] On July 25, 2000, Mathews formally requested, pursuant to Mass.R.Prof.C. 1.16(d) and (e), 426 Mass. 1370 (1998), certain other documents that had not been previously provided by Choate. On September 18, 2000, although disclosing some additional documents, Choate specifically informed Mathews's counsel that MSN had no obligation to produce the settlement agreement. On September 22, 2000, Mathews again made a formal request for the documents. On September 26, 2000, Choate reluctantly produced excerpts from the deposition testimony and a heavily redacted version of the 1997 settlement agreement. On November 14, 2000, Mathews filed its motion to disqualify Choate.

We are well aware that motions to disqualify can be used as dilatory and harassing litigation tactics that disrupt the efficient administration of justice. *Gorovitz* v. *Planning Bd. of Nantucket,*

---

[5]The March 24, 2000, letter to Choate states in relevant part: "The instant lawsuit also involves the Distribution Agreement between Mathews and [MSN] and is therefore substantially related to your prior representation of Mathews. In these circumstances, it seems that you and your firm have a conflict of interest in representing a client adverse to Mathews in the instant lawsuit. Would you please let me know why this should not be grounds for disqualification of you and your firm in this matter."

[6]Choate's June 12, 2000, letter states in relevant part: "We are unable to produce deposition transcripts from the Irving Budd Matter as that case involved testimony regarding trade secrets . . . and, accordingly, the depositions were taken and designated as confidential . . . ."

394 Mass. 246, 250 n.7 (1985). See *Masiello* v. *Perini Corp.*, 394 Mass. 842, 850 (1985). However, the evidence supports the motion judge's determination that this is not the case here.

It appears that Mathews's counsel and Choate had conversations both before and after Mathews filed its complaint, although there is conflicting affidavit testimony as to whether Mathews's counsel was made aware of Choate's involvement with Mathews prior to March, 2000. The record evidences no unreasonable delay on the part of Mathews, and the motion judge properly could have found that Mathews communicated the potential conflict promptly. Moreover, MSN's failure to provide requested relevant information about the 1995 case and its consequences can only be viewed as a dilatory litigation tactic itself.

We reject MSN's arguments that the information requested by Mathews was unnecessary and that Mathews needed only two pieces of information to identify the alleged conflict of interest: (1) the "scope" of the 1995 case and (2) the "scope" of the case at bar. MSN implies, as it did in its argument on "substantial relationship," that conscientious evaluation of the conflict claim requires only a mechanical and simple reading of the pleadings of the two cases. We disagree.

The motion judge could reasonably conclude that the withheld information was relevant to Mathews's fair determination of whether to press the disqualification issue. Thoughtful counsel should not make a disqualification decision lightly or on the basis of a mechanical comparison of pleadings. We conclude that there was no unreasonable delay by Mathews.

4. *Timeliness of notice of appeal.* Mathews argues that MSN's appeal of the disqualification order was untimely.[7] We disagree. Rule 4(a) of the Massachusetts Rules of Appellate Procedure provides in relevant part: "In a civil case, unless otherwise provided by statute, the notice of appeal required by Rule 3

---

[7]In its opposition to MSN's motion to stay the disqualification order, Mathews argued to the motion judge, inter alia, that MSN's notice of appeal was untimely. The motion judge declined to take a position on the matter, "believing it to be more appropriately addressed on appeal."

shall be filed with the clerk of the lower court within thirty days of the date of the *entry of the judgment* appealed from" (emphasis supplied).[8]

The record evidences a clerical ambiguity. Specifically, the docket sheet from the Superior Court clerk's office contains two distinct dates as possible "entry" dates. The left hand column of the docket sheet contains the date "06/21/2001." In a text paragraph directly to the right, however, appears "order . . . Notice sent 6/20/01 (entered 6/20/01)." If the June 21, 2001, date is utilized for the computation of the Rule 4(a) requirement, the appeal is timely. If the June 20, 2001, date is used, the notice of appeal is late by one day.

In *Standard Register Co.* v. *Bolton-Emerson, Inc.*, 35 Mass. App. Ct. 570 (1993), this court found that the ambiguity between the dates on the docket sheet was not the parties' responsibility, stating that "though procedural law has some claims of its own, its main function is to facilitate adjudication on the merits — not to abort such inquiry and decision. The courts of the Commonwealth have long been committed to this understanding of the subject. As applied to appeals, our court has spoken of 'the evolving rule that a procedural tangle having its origin in a failure by the court' — here we may include the court clerk — 'to observe the mandates of rules will generally be resolved in favor of preserving rights of appeal where this result is technically possible and does not work unfair prejudice to other parties.' " *Id.* at 574, quoting from *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. 116, 121 (1990).

The docket sheet has two distinct dates, either of which may be argued as operative. This clerical ambiguity is clearly not the responsibility of either party, but rather, of the Superior Court

---

[8]The disqualification order is not a "judgment." It is an interlocutory order "conclusive of a party's right to counsel of his choice . . . , effectively unreviewable on appeal from judgment." It is immediately appealable under the doctrine of present execution. See *Borman* v. *Borman*, 378 Mass. 775, 780-781 (1979). Rule 3(a) of the Massachusetts Rules of Appellate Procedure, as amended, 378 Mass. 927 (1979), provides that such an appeal is taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Mass.R.A.P. 4.

clerk.[9] Because neither party suffered any unfair prejudice due to the clerical ambiguity, we treat the order as having been entered June 21, 2001.

*Order of disqualification affirmed.*

---

[9]Contrast *BJ's Wholesale Club, Inc.* v. *City Council of Fitchburg*, 52 Mass. App. Ct. 585 (2001) (no excusable neglect when no clerical ambiguity on the docket sheet and appellant's telephone inquiry to the court clerk referenced incorrect docket number).