NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1292                                        Appeals Court

COMMONWEALTH  vs.  TIMOTHY A. ZABEK.


No. 13-P-1292.

Franklin.     March 5, 2014. - October 28, 2014.

Present:  Kafker, Fecteau, & Agnes, JJ.


Attorney at Law, Attorney as witness, Conflict of interest,
     Withdrawal.  Constitutional Law, Assistance of counsel.
     Practice, Criminal, New trial, Assistance of counsel.
     Witness, Attorney as witness.  Conflict of Interest.


Indictments found and returned in the Superior Court
Department on November 16, 2009.

     The cases were tried before John A. Agostini, J., and a
motion for a new trial was considered by him.


     William A. Korman for the defendant.
     Steven Greenbaum, Assistant District Attorney, for the
Commonwealth.


     AGNES, J.  It is a cardinal principle of both Federal and

State law that the right to the effective assistance of counsel

requires that the defendant not only have an opportunity to

obtain the advice and guidance of counsel, but also to rely on

the undivided loyalty of counsel to represent the defendant "with full force and zealousness." Commonwealth v. Perkins, 450 Mass. 834, 850 (2008), quoting from Commonwealth v. Downey, 65 Mass. App. Ct. 547, 553 (2006). "A conflict of interest arises whenever an attorney's regard for one duty, such as that owed to a third party or in service of his own interests, leads the attorney to disregard another duty, such as that owed to his client." Perkins, supra at 851. See Commonwealth v. Shraiar, 397 Mass. 16, 20 (1986) ("An actual or genuine conflict of interest arises where the independent professional judgment of trial counsel is impaired, either by his own interests, or the interests of another client") (internal quotation marks omitted).

In the present case, a serious, potential conflict of interest became apparent shortly before trial commenced. Appropriate steps were taken by the judge to identify the risks of defense counsel's continued representation of the defendant. The judge was warranted in concluding that, based on the evidentiary landscape prior to trial, defense counsel's prospective testimony as the sole witness to a statement made by one of the victims would not be required. We commend the judge for conducting a thorough colloquy with the defendant prior to the trial to ensure that the defendant was fully informed of his attorney's potential conflict of interest and could make a

voluntary decision to continue to have counsel represent him.
See Perkins, supra at 856 (emphasizing "the importance of trial
judges being vigilant about conflicts of interest").  We also
have considered the evidence as it developed at trial and
conclude that there was no substantial risk of a miscarriage of
justice resulting from defense counsel not testifying as a
witness.  Accordingly, we affirm the denial of the defendant's
motion for a new trial.[1]

Background.  The defendant was charged with, and ultimately
convicted of, one count of rape of a child (G.L. c. 265, § 23),
five counts of indecent assault and battery on a child under the
age of fourteen (G. L. c. 265, § 13B), and four counts of
indecent assault and battery on a person fourteen years of age
or older (G. L. c. 265, § 13H).  There were three victims, each
of whom testified that the defendant committed various acts
against her, including one victim who testified that she was
raped; numerous instances of indecent and unlawful acts were
described by each of the victims.  Two of the victims were the
children of the defendant's girl friend.

Following the defendant's arraignment, one of the victims,
who by this time was an adult, expressed reservations about

---

[1] The defendant initially filed a direct appeal from his
convictions.  That appeal was dismissed for lack of prosecution.
This subsequent appeal is solely from the order denying the
defendant's motion for a new trial.

testifying against the defendant due to concerns about the impact it would have on her family. She related her concerns to her mother who, in turn, spoke to the defendant. The defendant suggested that the victim speak to the defendant's lawyer. The victim's mother outlined options for the victim including testifying that the incidents of rape and sexual abuse did not occur, testifying that the victim was confused and did not remember what had happened, and simply telling the truth. The victim's mother brought the victim to defense counsel's office, where the victim spoke alone with counsel. The January 20, 2010, interview was not recorded.

Shortly before trial, these developments came to the attention of the Commonwealth. On April 22, 2011, the Commonwealth filed a motion in limine seeking clarification of defense counsel's status as counsel or a witness and requesting rulings of law. After conducting a hearing, the judge entered an order in which he recognized that a potential conflict of interest existed and outlined a procedure to address it. The judge appropriately invited the Commonwealth to review a written summary of the interview with the victim (summary) that was submitted by defense counsel prior to trial to ascertain whether she disagreed with any statements she may have made to defense counsel, and, if so, whether they were material to the issues at

trial.[2]  If the answer to these questions was "yes," defense counsel would be given an opportunity to be heard on whether his disqualification from representing the defendant would work a substantial hardship on his client.  Even if the answer to either question was "no," the judge stated he would conduct a colloquy with the defendant to ensure that he understood the risks of proceeding with his current attorney.

Prior to the selection of the jury, the judge conducted a further hearing.  The Commonwealth reported that a State police officer reviewed the summary with the victim who stated that she agreed with it subject only to two minor exceptions that did not involve material facts.  After conferring with the Commonwealth, defense counsel answered in the affirmative to the judge's inquiry whether he was "satisfied that there will be at this point nothing coming out of [the victim's] testimony which would be so different that [he] would have to take the stand to rebut it in order to effectively represent [his] client."  Counsel also reported that he had discussed the issue with the defendant who desired that counsel continue representing him.  The judge

---

[2] The summary prepared by defense counsel states that the victim disclosed prior abuse by her stepfather (a person other than the defendant).  Otherwise, it states that with respect to the essential points related by the victim to the police about the defendant's unlawful acts, she did not clearly recall the details and may have confused acts committed by her stepfather with those she said had been committed by the defendant.

conducted an extensive colloquy[3] and found that the defendant had been informed of the potential conflict, but wanted to retain his present attorney as defense counsel for the trial.

At trial, the victim in question testified that as a very young child she had been sexually abused by her stepfather prior to the time that the defendant came into her mother's life. She also testified that during her grammar school years, she had been sexually abused by the defendant, including one instance in which he digitally penetrated her vagina. This victim also testified about the statement she had given to the police, her reservations about testifying against the defendant, and the statement that she had given to defense counsel. Further details of her testimony are reserved for the discussion below.

Discussion. 1. Pretrial assessment of conflict of interest. It is the defendant's burden to prove a genuine conflict of interest by presenting "demonstrative proof detailing both the existence and the precise character of th[e] alleged conflict of interest; we will not infer a conflict based on mere conjecture or speculation." Shraiar, 397 Mass. at 20. The defendant's principal argument on appeal is that the judge erred in denying his motion for a new trial based on two decisions by the Supreme Judicial Court: Commonwealth v.

_____

[3] The colloquy, including the judge's findings and rulings, is reproduced in an appendix to this opinion.

Rondeau, 378 Mass. 408 (1979), and Commonwealth v. Patterson,

432 Mass. 767 (2000).[4]  In Rondeau, the defendant was convicted

of an armed robbery of a Worcester credit union.  The

defendant's trial counsel testified at a hearing on a motion for

a new trial that he saw the defendant in the courthouse on the

morning when the defendant was alleged to have committed the

crime.  Although there were other alibi witnesses, the

defendant's trial counsel was the only alibi witness without a

criminal history.  The judge denied the defendant's motion for a

new trial based on his determination that counsel's alibi

testimony lacked credibility and thus its unavailability at

trial was not a source of prejudice.  Although the Supreme

Judicial Court upheld that portion of the judge's ruling, it

determined that counsel's failure to abide by his ethical

obligations to withdraw created an actual conflict of interest.

Rondeau, supra at 416-417.[5]  The court explained that an actual

---

[4] The trial judge was aware of these decisions and appropriately relied on them in addressing the issues prior to the trial.

[5] In Rondeau, the court reasoned that the conflict of interest was defined by counsel's violation of S.J.C. Rule 3:07, Canon 5, Disciplinary Rule 5-102(A), as appearing in 382 Mass. 779 (1981), which established counsel's duty to withdraw from representation at trial, subject to only limited exceptions which were not applicable, when counsel learned he ought to be called as a witness to testify on behalf of his client.  The current rule that corresponds to its predecessor is Mass. R. Prof. C. 3.7, 426 Mass. 1396 (1998).  It prohibits a lawyer from acting as trial counsel "at a trial in which the lawyer is

conflict of interest exists once it becomes apparent to defense counsel that "his testimony might be necessary to the proper defense of his client." Id. at 414. An actual conflict of interest denies the defendant his right to representation by an attorney with undivided loyalty. Id. at 414-415. Counsel's failure to withdraw in such a case is constitutionally ineffective assistance, without the need to show prejudice. See Commonwealth v. Davis, 376 Mass. 777, 781-782 (1978). "[U]nder art. 12, if a defendant establishes an actual conflict of interest, he is entitled to a new trial without a further showing; he need not demonstrate that the conflict adversely affected his lawyer's performance or resulted in actual prejudice." Commonwealth v. Mosher, 455 Mass. 811, 819 (2010).[6]

Similarly, in Patterson the court noted that within a few days of the defendant's arraignment, it should have been evident to defense counsel that an actual conflict of interest existed because counsel was present when the defendant reportedly made

---

likely to be a necessary witness." See Patterson, supra at 778 nn.12-13.

[6] "The conflict lies in the fact that the client's interests would be better served by having the attorney testify while the attorney's interests would be better served by not testifying." Patterson, supra at 780. See ibid. n.18 (explaining that once a conflict arises, counsel's decision to remain as trial attorney cannot be defended as a legitimate strategic choice because counsel is no longer in a position to render independent professional judgment on behalf of her client).

statements to the police. Further, counsel was the only witness (other than the defendant) who could contradict the police version of the defendant's statement that the Commonwealth intended to offer at trial. Id. at 777-778.

Avoiding the consequences of an actual conflict of interest is a shared responsibility of counsel and the court. Under the Code of Professional Responsibility, both the prosecutor and defense counsel have a duty to notify the court and take appropriate steps to withdraw from a case when an actual conflict arises.[7] The judge also has an obligation to "take

---

[7] The Code of Professional Responsibility is self-executing. See Borman v. Borman, 378 Mass. 775, 787-788 (1979) ("If an attorney is unsure whether in a given case his conduct violates the code, he should terminate the questionable conduct or seek the advice of the appropriate Committee on Ethics and Professional Responsibility. If he persists in questionable conduct, he risks disciplinary action including disbarment. When a lawyer, exercising his best judgment, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it").

It should be noted that a conflict of interest does not exist merely because an attorney interviews one or more of the witnesses scheduled to testify at trial. See Commonwealth v. Wright, 376 Mass. 725, 734 (1978). This case, however, illustrates the risks when counsel interviews a witness alone. "To avoid lawyer-witness problems, it is typical and advisable for lawyers to conduct witness interviews [in the presence of an investigator] so that a third person can be called as an impeachment witness if the interviewee testifies inconsistently at trial." State v. Sanchez, 171 Wash. App. 518, 546 (2012). The same advice applies to prosecutors. See United States v. Johnston, 690 F.2d 638, 645 (7th Cir. 1982) (en banc). See also ABA Standards for Criminal Justice, Prosecution Function and

early and effective action," as the judge did in this case, whenever the existence of a potential or actual conflict of interest comes to the court's attention.[8]  Rondeau, supra at 417.

    The present case is clearly distinguishable from Rondeau and Patterson because, prior to trial, the judge determined, and both counsel and the defendant agreed, that there was no reason to believe that the victim would testify in a manner that was inconsistent with what she had told defense counsel during the interview.  Under these circumstances, there was thus no basis for defense counsel to believe he would be required to testify

---

Defense Function, Standard 4-4.3(e), Relation With Prospective Witnesses (3d ed. 1993); Committee for Public Counsel Services Assigned Counsel Manual, Policies and Procedures, Chapter IV, Part II, Preliminary Proceedings & Preparation, E., Special Concerns (online resource last viewed August 27, 2014) ("Counsel should take advantage, where appropriate, of opportunities to interview witnesses who may be present in court.  Counsel must avoid becoming a witness in his/her own case.  Therefore, interviews of prosecution witnesses should be 'witnessed' by another person (e.g. another defense attorney) to avoid later problems with proving an impeaching statement at trial").

    [8] A judge has discretion to decline to accept the defendant's waiver of conflict-free counsel in circumstances in which the judge determines that it is unlikely that counsel will be able to provide effective representation.  See Commonwealth v. Jordon, 49 Mass. App. Ct. 802, 810 (2000), citing Wheat v. United States, 486 U.S. 153, 163 (1988).  In Wheat, the Supreme Court observed that although there is a "presumption" in favor of the defendant's counsel of choice, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court."  Id. at 164.

about his interview, and there was no actual conflict of interest. As for the potential conflict of interest that remained, "[a] defendant claiming ineffective assistance of counsel due to a potential conflict of interest will be entitled to a new trial only if he can establish 'material prejudice' to his defense resulting from the alleged conflict." Mosher, 455 Mass. at 823, quoting from Shraiar, supra at 20.

2. Ineffective assistance of counsel during trial. We address two remaining questions. First, whether the potential conflict of interest that existed at the outset of the trial developed into an actual conflict of interest as the evidence unfolded. Second, we examine the record to determine whether the defendant has established that he was materially prejudiced in some concrete way by his counsel's decision not to testify. See Commonwealth v. Boateng, 438 Mass. 498, 508-509 (2003).

a. Absence of actual conflict of interest during trial. We begin by reiterating that the burden rests with the defendant to demonstrate the existence of an actual conflict of interest. See Shriar, supra. Conjecture about what might have occurred is not a substitute for credible evidence of an actual conflict. See Commonwealth v. Balliro, 437 Mass. 163, 168 (2002). It is unnecessary to determine whether the judge's pretrial colloquy was an effective waiver of the right to conflict-free counsel because the differences between the victim's testimony at trial

and what counsel and the judge anticipated her testimony would be at the outset of the trial were not significant, and, thus at no time did circumstances arise creating an actual conflict of interest that required defense counsel to withdraw in order to be a witness for the defendant.

b. <u>Absence of material prejudice</u>. The defendant does not point to anything his counsel did or failed to do at trial that resulted in material prejudice. The record indicates that defense counsel conducted a vigorous defense on behalf of his client. See <u>Shraiar</u>, <u>supra</u> at 25. Defense counsel effectively impeached the victim. Counsel's cross-examination of the victim brought out that she made previous inconsistent statements regarding whether the defendant touched her inappropriately. Specifically, she testified that she told counsel that she did not think the defendant's hugs were "sexual," that she might have confused the defendant's conduct with that of her stepfather, including the act of digital penetration, and that she was unsure whether the defendant had touched her breasts. When she did not recall a portion of the interview with defense counsel, he read aloud the entire paragraph from the written summary of the interview. The defendant's argument that had his attorney testified, the jury would have heard a "clear recitation" of the interview he conducted with the victim is speculative for the written summary is dated some fifteen months

after the interview occurred.  Moreover, as the Commonwealth points out, a fair reading of the defense counsel's written summary of the interview is not that the victim recanted her earlier statements; rather, as the victim acknowledged forthrightly at trial, she made inconsistent statements.

Conclusion.  When a judge becomes aware that an attorney in the case may have a conflict of interest, the "best practice" is to address it promptly by initiating a colloquy with counsel. Perkins, supra at 856.  Here, the judge took appropriate steps to identify that a serious, potential conflict of interest existed, determined its precise nature, and then determined that it was not an actual conflict of interest that required the withdrawal or disqualification of counsel.  His findings and rulings are supported by the evidence.  The judge also wisely conducted a thorough colloquy with the defendant to ensure that the defendant was aware of the potential conflict and wished to have counsel continue to represent him.  (See appendix.)  Our review of the evidence at trial leads us to conclude that the defendant has failed to establish that he suffered any material prejudice as a result of the potential conflict of interest.

Order denying motion for
new trial affirmed.

<u>A</u><u>PPENDIX</u>.

<u>Pretrial colloquy concerning potential conflict of interest</u>

THE JUDGE:  "It is my understanding, through discussions with counsel, that your attorney met with one of the alleged victims in this case who will be a witness in this case.  Is that your understanding?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "And it's also my understanding that your attorney received information, which he has reduced to writing and has provided the Court with a copy, and you may yourself have reviewed it; is that correct?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "The concern that we have here is that if the witness then decides to change her testimony, the only witness who could say that she said something different at the time of the interview is your attorney, Mr. Curtiss.  Do you understand that?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "And then it creates a situation where the attorney becomes a witness and, if we're aware of that ahead of time we have to recuse the attorney or have him step aside and have another attorney come in to take his place.  Do you understand that?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Now, that creates some issues, because it delays the trial, you'd have to get a new attorney and things of that nature.  But it's done to protect your interests, to make sure you have all the witnesses available to you during the course of the trial.  Do you understand that?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Now in going through this issue, as you probably heard, the witness does not intend at this point to contradict what she said to your attorney at the time of the hearing except for two minor points.  Do you understand that?"

THE DEFENDANT:  "Yes, I do, your Honor."

THE JUDGE:  "And with respect to those two minor points, they appear to be not of consequence for this trial and both the Commonwealth and your attorney have agreed that that's not going to be an issue in the case.  Do you understand that?"

THE DEFENDANT:  "Yes, I do."

THE JUDGE:  "So the question becomes:  First of all, are you aware of all of these circumstances?"

THE DEFENDANT:  "Yes, your Honor, I am."

THE JUDGE:  "And are you also aware that you are entitled under the Fifth Amendment to the United States Constitution to be represented by counsel and to have that counsel free from any possible conflict of interest, do you understand that?"

THE DEFENDANT:  "Yes, I do, your Honor."

THE JUDGE:  "And do you understand by this information coming out and determining what the witness is likely to say, that your attorney, Mr. Curtiss, is able to effectively represent you during the course of this trial?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Now, do you also understand -- we can't guarantee what people are going to say, we are often surprised and something may come up during the course of the trial we can't anticipate and we'll have to deal with at that point. However, at this time both counsel believe that this will not be an issue in the case; do you understand that?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Given all this information, do you wish to proceed with Atty. Curtiss representing you in this matter?"

THE DEFENDANT:  "Yes, your Honor, absolutely."

THE JUDGE:  "I take it from reading the file he has represented you right from the beginning in this case?"

THE DEFENDANT:  "That's right."

THE JUDGE:  "So that the record is clear, the arraignment was on December 17th, 2009, so for almost a year and a half he has represented you; is that correct?"

THE DEFENDANT:  "That is correct, your Honor."

THE JUDGE:  "And you wish to have him continue to represent you in this case?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Are you making this decision freely and voluntarily?"

THE DEFENDANT:  "Yes, your Honor."

THE JUDGE:  "Has anyone forced you to make this decision?"

THE DEFENDANT:  "No."

THE JUDGE:  "Are you under the influence of any drugs, medication or alcohol at this time?"

THE DEFENDANT:  "No, your Honor."

THE JUDGE:  "Do you think it's in your best interests to have Atty. Curtiss continue to represent you in this case?"

THE DEFENDANT:  "Yes, your Honor, I do."

THE JUDGE:  "Do you have any questions of me?"

THE DEFENDANT:  "Not at this time."

THE COURT:  "Thank you.  You may sit down."

THE DEFENDANT:  "Thank you."

THE COURT:  "I find that the Defendant is fully apprised of the situation, has been provided the information with respect to this potential conflict and our solution concerning this conflict, and that the Defendant has voluntarily agreed and believes it's in his best interests to have Atty. Curtiss represent him, so I'm going to allow Atty. Curtiss to continue to represent the Defendant with respect to this case."