NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-339                                              Appeals Court
16-P-340


COMMONWEALTH  vs.  DAVID DELNEGRO.


Nos. 16-P-339 & 16-P-340.

Hampden.       January 6, 2017. - April 12, 2017.

Present:  Kafker, C.J., Hanlon, & Agnes, JJ.


Practice, Criminal, Interlocutory appeal, Assistance of counsel.
     Supreme Judicial Court, Superintendence of inferior courts.
     Attorney at Law, Disqualification, Attorney as witness,
     Conflict of interest.  Conflict of Interest.  Witness,
     Attorney as witness.  Constitutional Law, Assistance of
     counsel.  Due Process of Law, Assistance of counsel.



     Complaints received and sworn to in the Springfield
Division of the District Court Department on February 4, 2014,
and June 8, 2015.

     Motions for disqualification of counsel, filed on April 10,
2015, and October 15, 2015, were heard by Patricia T. Poehler,
J., and Philip A. Contant, J., respectively.


     Kaily Hepburn for the defendant.
     Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.


     KAFKER, C.J.  The defendant, David Delnegro, seeks

interlocutory review of orders disqualifying his attorney, Kaily

Hepburn, from representing him in two criminal cases. Hepburn was the sole passenger in the defendant's vehicle when he was charged with operating a motor vehicle under the influence of alcohol and negligent operation. Hepburn was also present at a subsequent hearing on that matter in which the defendant got into an altercation with court officers and was charged with assault and battery on a public employee, disruption of court proceedings, and disorderly conduct. The defendant claims that Hepburn is not a necessary witness in the first case, and even though she is a necessary witness in the second case, that she can represent him in pretrial proceedings. He also argues that he has consented to any conflict of interest arising from the representations.

We dismiss the interlocutory appeals because the defendant did not petition a single justice of the Supreme Judicial Court for interlocutory review pursuant to G. L. c. 211, § 3, and the doctrine of present execution does not provide for interlocutory review of disqualification of counsel orders in criminal cases. We nonetheless consider the propriety of Hepburn's representation of the defendant, due to the important ethical considerations at stake, and conclude that she cannot represent him in either case at trial or any pretrial proceedings.

Background. The Commonwealth alleges the following facts. On February 4, 2014, at approximately 2:00 A.M., the defendant

was driving in an erratic manner through the streets of Springfield. Hepburn was the only passenger in the vehicle. A police officer stopped the vehicle and approached it. Based on the defendant's "glassy and bloodshot" eyes, flushed face, slurred speech, and the odor of alcohol on his breath, the officer asked him to get out of the car. He had difficulty doing so and, in the officer's opinion, performed poorly on field sobriety tests. The officer then placed him under arrest. At this point, according to the officer, Hepburn "ran out" of the vehicle and "demanded" that the officer release the defendant, because she was an attorney. Again, according to the officer, Hepburn was "extremely belligerent" and began "screaming obscenities" at him.

After the defendant's arraignment on the resulting criminal case, Hepburn sought to represent him. The Commonwealth moved to disqualify her, arguing that she had a conflict of interest because of her status as a percipient witness to the events underlying the charges. The motion judge agreed, noting that, because Hepburn was the only passenger in the vehicle, she was the "percipient witness," and the only person "who could possibly rebut the testimony of the police." The judge further explained: "[The officer's] report does not cast her in a particularly flattering light. Given this police report, I do not see how Attorney Hepburn can be loyal to the defendant and

to herself.  Any analysis by her regarding whether she is a necessary witness for the defendant would naturally be impacted by her self interest in not embarrassing herself by taking the witness stand and subjecting herself to cross examination.  The conflict lies in her divided loyalties."[1]

Thereafter, at a hearing on June 8, 2015, the Commonwealth alleges that the defendant, representing himself, became aggravated with the judge.  Hepburn sat in the gallery of the courtroom behind the defendant.  After the judge continued the defendant's case, according to court officers, the defendant refused to leave the courtroom and began shouting about unrelated matters.  There was also apparently a struggle over a court document in the defendant's hands that Hepburn may have given him.  Several court officers attempted to escort him from the courtroom, and a physical struggle ensued.  Hepburn followed the officers as they removed the defendant from the courtroom, lobby, and courthouse, insisting that they release him and

---

[1] The Commonwealth first raised the issue of the propriety of Hepburn's representation at a pretrial hearing on the first case.  The judge heard arguments at sidebar and determined that Hepburn could represent the defendant.  At a subsequent hearing, a different judge conducted a colloquy with the defendant to ensure that he understood the consequences of Hepburn's representation.  Several weeks later, the Commonwealth filed a motion to disqualify Hepburn based on her conflict of interest and status as a necessary witness, which the defendant opposed.  The second judge agreed with the Commonwealth and disqualified Hepburn from representing the defendant in the first case for the reasons discussed above.

attempting to record the incident.[2] The defendant was eventually placed under arrest.

Initially, Hepburn sought to represent the defendant in the case arising from the second incident. The Commonwealth again moved to disqualify her, based on her presence at the hearing. The motion judge agreed and disqualified her from representing the defendant in the second case, finding that she "was not only a percipient witness but actively involved in the underlying events."

Discussion. 1. Notices of appeal and the doctrine of present execution. The defendant's notices of appeal for both disqualification orders cited Mass.R.Crim.P. 15, an inapplicable rule related to motions to suppress. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996) (defendant may apply to single justice of Supreme Judicial Court for leave to appeal order determining motion to suppress evidence). The defendant also did not petition a single justice of the Supreme Judicial Court for interlocutory review pursuant to G. L. c. 211, § 3, which would have been the appropriate means to immediately seek review of the disqualification orders.[3] Rather,

---

[2] Hepburn attested that another court officer took away her cellular telephone, which she was using to record the incident. No videotape appears in the record of the incident.

[3] G. L. c. 211, § 3, as appearing in St. 2011, c. 93, § 46, grants the Supreme Judicial Court the general superintendence

at a subsequent hearing and in later filings, the defendant relied on the doctrine of present execution to justify the interlocutory appeals. We conclude that interlocutory review of such orders may only be permitted pursuant to G. L. c. 211, § 3, because the doctrine of present execution does not apply to disqualification orders in criminal matters, for the reasons explained by the United States Supreme Court in Flanagan v. United States, 465 U.S. 259, 264 (1984). We therefore dismiss the appeals.

Generally, "a judgment must be final to be appealable." Commonwealth v. Bruneau, 472 Mass. 510, 515 (2015). This rule is "crucial to the efficient administration of justice," and serves the important interests of not burdening the parties and clogging the courts with costly, time-consuming piecemeal appeals. Flanagan, supra. In criminal cases, the reasons for the final judgment rule are "especially compelling" for both the defense and the Commonwealth. Ibid., quoting from Cobbledick v. United States, 309 U.S. 323, 324 (1940). The Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights provide criminal defendants with the right to a speedy trial. See Mass.R.Crim.P. 36(b), 378 Mass. 909

---

power to correct and prevent errors and abuses by courts of inferior jurisdiction "if no other remedy is expressly provided."

(1979). As for the Commonwealth, "[a]s time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote." Flanagan, supra.

Therefore, in criminal cases, the "[Supreme] Court has allowed a departure [from the final judgment rule] only for the limited category of cases falling within the 'collateral order' exception." Id. at 265, citing Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-547 (1949). To fall within this "narrow exception," Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981), a trial court order must, at a minimum, meet three conditions. First, it must "conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; and third, it must be "effectively unreviewable on appeal from a final judgment." Id. at 375, quoting from Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

The Supreme Court has concluded that a motion to disqualify counsel in a criminal case does not satisfy the third prong of this rule because it is not "effectively unreviewable on appeal from a final judgment." Flanagan, supra at 266. The reason is that a defendant who demonstrates on appeal that his or her chosen counsel was improperly disqualified has an effective

remedy:  the defendant is entitled to a new trial without a showing of prejudice.  See id. at 268. "No showing of prejudice need be made to obtain reversal [of an erroneous disqualification order] because prejudice to the defense is presumed."  Ibid.  This presumption "reflects [the] constitutional protection of the defendant's free choice," independent of the "objective fairness" of the proceedings. Ibid.  See United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006), quoting from Sullivan v. Louisiana, 508 U.S. 275, 282 (1993) ("erroneous deprivation of right to counsel of choice 'unquestionably qualifies as structural error'").

In the present case, to support his contention that the motion to disqualify counsel is immediately appealable, the defendant relies on a line of Massachusetts civil cases applying the doctrine of present execution to disqualification motions. See, e.g., Maddocks v. Ricker, 403 Mass. 592, 598 (1988). Pursuant to the present execution doctrine, an order is "immediately appealable if it concerns an issue that is collateral to the basic controversy . . . and the ruling will interfere with rights in a way that cannot be remedied on appeal from the final judgment." Rodriguez v. Somerville, 472 Mass. 1008, 1009 (2015), quoting from Shapiro v. Worcester, 464 Mass. 261, 264 (2013).

The defendant is correct that disqualification orders in civil cases are immediately appealable under the doctrine of present execution.[4] See Maddocks, supra. See also Smaland Beach Assn., Inc. v. Genova, 461 Mass. 214, 219 n.10 (2012) (pretrial disqualification order immediately appealable in property case). Such orders "realistically" cannot be "cured on appeal" from the final judgment because, in civil cases, prejudice must be shown in addition to an abuse of discretion in disqualifying the attorney. Maddocks, supra. See Bryan Corp. v. Abrano, 474 Mass. 504, 509, 516 (2016). Although, in theory, there could be a new trial in which the client is represented by chosen counsel, in practice, "it is unlikely that an appellate court would reverse a judgment and require a new trial in the absence of a demonstration, often impossible to make, that [the] erroneous disqualification order significantly prejudiced the rights of the client." Maddocks, supra.

Criminal cases are, however, as explained above, quite different. Whereas, in civil cases, prejudice is difficult, if not impossible to prove, even when counsel was improperly disqualified, making appeal of the disqualification order

---

[4] The United States Supreme Court has adopted a different approach, holding that "orders disqualifying counsel in civil cases, as a class, are not sufficiently separable from the merits to qualify for interlocutory appeal." Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 440 (1985).

essentially unreviewable, in criminal cases, such prejudice is presumed, and the defendant will automatically receive a new trial upon a showing that the disqualification was improper. See, e.g., Commonwealth v. Rondeau, 378 Mass. 408, 415 (1979). Moreover, as explained by the United States Supreme Court, there are compelling reasons, constitutional and otherwise, to more strictly enforce the final judgment rule in criminal, rather than in civil, cases. See Flanagan, 465 U.S. at 264. We therefore conclude that the doctrine of present execution does not apply to render disqualification orders immediately appealable in criminal cases.

This does not leave the defendant in a criminal case without a remedy. The defendant, discerning a clear abuse of discretion in the trial court's disqualification of his or her chosen counsel, can file a G. L. c. 211, § 3, petition to a single justice of the Supreme Judicial Court. The single justice can quickly and efficiently address abuses or errors in the disqualification decision likely to result in a new trial, and the delays associated therewith, if not otherwise corrected. This alternative avenue of review properly balances the need to avoid inefficient and time-consuming piecemeal appeals, while providing for the rapid correction of obvious errors regarding the disqualification of counsel in earlier proceedings.

2.  Disqualification of counsel.  Despite our conclusion that the interlocutory appeals are not properly before us, we nevertheless address the propriety of Hepburn's representation of the defendant, "because the claim[s] [have] been briefed fully by the parties, [they] raise[] . . . significant issue[s] concerning the [ethical conduct of lawyers], and addressing [them] would be in the public interest."  Marcus v. Newton, 462 Mass. 148, 153 (2012) (addressing merits even though party was "not entitled to an interlocutory appeal...under the doctrine of present execution").[5]  The trial judges in both cases found that Hepburn should be disqualified as counsel.  We review those decisions for an abuse of discretion.  See Smaland, supra at 220.  Based on the record before us, we discern none.

a.  Necessary witness.  Although subject to certain exceptions, a lawyer that is "likely to be a necessary witness" cannot represent the defendant at trial.[6]  Mass.R.Prof.C. 3.7(a), 426 Mass. 1396 (1998).  In determining the necessity of a

---

[5] "The public ha[s] a deep and vital interest in [the] integrity" of attorneys, who are "sworn to aid in the administration of justice and to act with all good fidelity both to [their] clients and to the court."  Berman v. Coakley, 243 Mass. 348, 354 (1923).

[6] The defendant argues that one of the exceptions applies -- that disqualification of Hepburn would "work substantial hardship" on him.  Mass.R.Prof.C. 3.7(a)(3), 426 Mass. 1396 (1998).  We disagree.  Neither case is particularly complex or difficult, and should not take a significant amount of time for another attorney to prepare for trial.

lawyer's testimony, courts consider "the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses."  Comment [4] to rule 3.7.

A witness is deemed necessary where "the proposed testimony . . . is material and relevant, . . . is also not cumulative and . . . unobtainable elsewhere."  Carta v. Lumbermens Mut. Cas. Co., 419 F.Supp. 2d 23, 31 (D. Mass. 2006) (applying Mass.R.Prof.C. 3.7[a]).   We then require disqualification because "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party."  Comment [1] to rule 3.7.  "The trier of fact may be confused or misled by a lawyer serving as both advocate and witness. . . .  A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others."  Id. comment [2].  See Serody v. Serody, 19 Mass. App. Ct. 411, 414 (1985) ("Commentators and the cases have remarked on the adverse effect upon the judicial process in the public mind of having lawyers leave the counsel table for the witness chair").

Based on the record before us, Hepburn is "likely to be a necessary witness" in both cases.  Rule 3.7(a).  The defendant recognizes this to be true in the second case, so we only address this issue in regards to the first case.  Hepburn was

the sole passenger in the defendant's vehicle prior to and during his first arrest and the only person who could contradict the officer's versions of the events.  See Commonwealth v. Patterson, 432 Mass. 767, 778 (2000) (defense counsel was necessary witness because she was only person who could refute Commonwealth's version of defendant's statement to police), overruled in part on other grounds, Commonwealth v. Britt, 465 Mass. 87, 99 (2013).  See Rondeau, 378 Mass. at 415-417 (defense counsel was necessary witness because he was only alibi witness that could not be impeached with criminal conviction).[7]

The fact that neither the Commonwealth nor the defendant presently intend to call Hepburn as a witness does not render her testimony unnecessary.  "[T]he rule depends not on whether the attorney will be called, but whether he [or she] ought to be called."  Borman v. Borman, 378 Mass. 775, 790 (1979).  To mount an adequate defense in either case, the defendant is very likely to need to call Hepburn as a witness.  Even if he does not plan to call her now, subsequent events at trial may require a change of plan and a change of mind.  At that point, Hepburn's testimony, as his attorney, would be "less effective" and "more

---

[7] Contrast Commonwealth v. Zabek, 86 Mass. App. Ct. 520, 526 (2014) (defense counsel was not necessary witness where victim expressed reservations about testifying to counsel, but "there was no reason to believe that the victim would testify in a manner inconsistent with what she told [counsel]").

easily impeachable." Borman, supra at 786. The jury might believe that she is "distorting the truth for [her] client." Ibid. If Hepburn does not testify, the Commonwealth could request a missing witness instruction, which would permit the jury to draw a negative inference against the defendant on the assumption that her testimony would not be favorable to him.[8] See Commonwealth v. Beltrandi, 89 Mass. App. Ct. 196, 203 (2016). Because the defendant's "present intention to forego the testimony of counsel appears obviously contrary to [his] interests," the motion judges "properly reject[ed] counsel's best judgment in the matter[s] and order[ed] disqualification." Borman, supra at 791.

We therefore conclude that Hepburn may not represent the defendant at trial in either case. Because the necessary witness rule contains the limiting phrase "at trial" and focuses on the problems associated with an advocate-witness,[9] we are

---

[8] The Commonwealth also indicated that if the defendant decides to take the stand at trial, the Commonwealth may call Hepburn as a rebuttal witness.

[9] "Unlike the rules governing disqualification due to conflicts of interest . . . rule [3.7(a)] contains the limiting phrase at trial. . . . [B]ecause the rule strives to mitigate potential jury confusion, to avoid the difficulties of cross-examining an adversary and to diminish the appearance of impropriety where an attorney leave[s] counsel table for the witness chair, . . . judges need only divorce the two functions -- that of advocate and witness -- at the trial itself" (citations and quotations omitted). Smaland, 461 Mass. at 225-226.

"limited to barring [Hepburn's] participation at trial" under this rule.  Smaland, 461 Mass. at 226 (emphasis supplied).  "Any disqualification that might extend to pretrial activities must derive from a different source."  Id. at 226-227.

b.  Conflict of interest.  We further conclude that Hepburn may not represent the defendant before trial.  See Mass.R.Prof.C. 1.7(a)(2), as amended, 430 Mass. 1301 (1999).  We do so because Hepburn has a significant conflict of interest that the defendant cannot properly waive, see id., comment [2], and the conflict rules, unlike the necessary witness rule, do not limit an attorney's disqualification to trial.  See Smaland, supra at 225.

Generally, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  Rule 1.7(a).  A concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer."  Rule 1.7(a)(2).  See Commonwealth v. Perkins, 450 Mass. 834, 852 (2008) (quotations omitted) (conflict of interest exists "where the independent professional judgment of trial counsel is impaired . . . by his [or her] own interests").  The burden "rests on the party seeking disqualification to establish the need to interfere with the relationship."  Steinert v. Steinert, 73 Mass. App. Ct. 287, 288 (2008).

In the present case, the Commonwealth has met its burden to establish that Hepburn has a concurrent conflict of interest in both cases. There is a "significant risk" that Hepburn's representation will be "materially limited" by her personal interests. Rule 1.7(a)(2). The police officer's testimony regarding what he described as her "aggressive tirade" during the defendant's first arrest portrays her in a less than flattering light, as the motion judge determined. By testifying, Hepburn would air this conduct publicly and subject herself to cross-examination. "The conflict lies in the fact that the client's interests would be better served by having the attorney testify while the attorney's interests would be better served by not testifying." Patterson, 432 Mass. at 780. See comment [1] to the Mass.R.Prof.C. 3.7 (lawyer's status as necessary witness "can also involve a conflict of interest").

Hepburn was also "intimately involved" in the events, which is when "[t]he need for disqualification is greatest." Serody, 19 Mass. App. Ct. at 415. Hepburn was with the defendant and was able to observe his driving before he was pulled over. She not only observed the subsequent events, but allegedly became an active participant in them. Apparently, the officer would testify that she argued "belligerent[ly]" with police during the first arrest.

Before his second arrest, Hepburn apparently provided to the defendant a copy of the court's docket, which, when he would not answer the court officers' questions about it, escalated the situation. Hepburn followed the officers as they escorted the defendant from the premises, insisting that they release him and attempting to record the incident with her cellular telephone. Her affidavit describes in detail her personal observations and actions, indicating she is a necessary witness for the motion to dismiss. Thus, Hepburn's testimony is central to her representation of the defendant before trial as well as at trial.

"Notwithstanding the existence of a concurrent conflict of interest," a lawyer may nonetheless represent a client under certain circumstances. Rule 1.7(b). As an initial matter, for the conflict to be "consentable," id. comment [2], the lawyer must "reasonably believe" that he or she "will be able to provide competent and diligent representation" despite the conflict. Id. 1.7(b)(1). The client must also give "informed consent, confirmed in writing," id. 1.7(b)(4), and such consent must be "voluntarily, knowingly, and intelligently" given. Perkins, 450 Mass. at 853, quoting from Commonwealth v. Martinez, 425 Mass. 382, 392 (1997). Finally the court must balance the right to chosen counsel on one hand, with the "obligation of 'maintaining the highest standards of

professional conduct and the scrupulous administration of justice,' on the other." Slade v. Ormsby, 69 Mass. App. Ct. 542, 545 (2007), quoting from Mailer v. Mailer, 390 Mass. 371, 373 (1983). In so doing, the court must determine whether the conflict "taints the legal system," requiring counsel to be disqualified regardless of consent. Id. at 546.

Based on the significant conflict of interest here, Hepburn's belief that she can provide competent and diligent representation to the defendant, either before trial or at trial, is not reasonable, and the defendant therefore cannot consent to the representation. The defendant's interests would not be "adequately protected," rule 1.7 comment [15], as Hepburn's current strategy, in representing him rather than serving as a potential witness on his behalf, is "obviously contrary to [his] interests." Smaland, 461 Mass. at 222. See Patterson, 432 Mass. at 779 ("[t]hat defense counsel 'ought' to testify concerning what transpired at her client's interview with the police soon became 'obvious'"); rule 1.7 comment [10] ("if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice"). "Avoiding the consequences of an actual conflict of interest is a shared responsibility of counsel and the court." Commonwealth v. Zabek, 86 Mass. App. Ct. 520, 524 (2014). Hepburn was thus

"ethically obligated to withdraw" as counsel and never should have taken on the representations, given her significant involvement as a participant and witness in both incidents leading to the defendant's arrests.  Rondeau, 378 Mass. at 414.

In reaching this conclusion, we recognize that courts "should not lightly interrupt the relationship between a lawyer and a client," Slade, supra at 545, quoting from G.D. Matthews & Sons Corp. v. MSN Corp., 54 Mass. App. Ct. 18, 20 (2002), and "due regard" should be given to the effect of disqualification on the defendant.  Rule 3.7 comment [4].  "Nonetheless, the right to representation by an attorney of one's choosing" is not absolute, and must, in some circumstances, yield to other considerations."  Bryan, 474 Mass. at 509.  Disqualification is proper, even if the client consents to the representation, if after a "searching review," the court determines that the representation would "taint[] the legal system or the trial of the cause before it."  Slade supra at 546.

Our review of the record confirms that disqualification was necessary to prevent such a taint.  Hepburn's representation would taint the pretrial as well as trial proceedings.  Also, neither of the cases are particularly difficult or complex, and should not take an excessive amount of time for another lawyer to get up to speed to litigate.  See Rule 3.7 comment [4].  The longer Hepburn continues to represent the defendant, the greater

the learning curve for her successor and the greater the possibility of ineffective assistance of counsel in the pretrial proceedings she does undertake.  We therefore conclude that, in the present case, the court's interests in maintaining the high ethical standards of the legal profession and "the public's interest in the fair, efficient, and orderly administration of justice," Commonwealth v. Burbank, 27 Mass. App. Ct. 97, 106 (1989), outweigh the defendant's right to chosen counsel at and before trial in both cases.

Conclusion.  For the reasons stated, the defendant's interlocutory appeals from the disqualification orders are dismissed.

So ordered.